PEOPLE v KOWALSKI

Docket No. 190352. Submitted October 8, 1997, at Detroit. Decided June 26, 1998, at 9:05 A.M.

  Stanley Kowalski was convicted in 1975 by a jury in the Oakland Circuit Court, John N. O'Brien, J., of first-degree murder. The defendant and a codefendant had confessed to shooting fatally two victims during a robbery. The codefendant's confession had come first. The defendant had asked to speak to an attorney when, during a police interview, he was advised of his rights pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). About ninety minutes later, a police detective had informed the defendant that the codefendant had made a statement. The detective had asked the defendant whether he still wanted an attorney. The defendant had replied that he no longer wanted an attorney. An assistant prosecutor, before taking the defendant's confession, had readvised the defendant of his *Miranda* rights. In 1976, the defendant's appointed appellate counsel filed a timely motion for a new trial, arguing that the trial court had erred in denying the defendant's pretrial motion for suppression of evidence of his confession, arguing that the confession had been obtained in violation of the defendant's right to counsel. A hearing on the motion was adjourned and no new date for hearing was set. In 1991, the defendant wrote a letter to the trial court to inform it of his unsuccessful efforts to contact his counsel and to inquire about the status of his case. The matter was assigned to Judge Hilda R. Gage, who appointed new counsel for the defendant. That counsel filed a "supplement" to the 1976 motion for a new trial, arguing that the defendant's confession had been obtained in violation of *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), which was given limited retroactive effect in *Shea v Louisiana*, 470 US 51; 105 S Ct 1065; 84 L Ed 2d (1985). Judge Gage denied the motion for a new trial, ruling that the defendant had abandoned the motion. The defendant appealed by leave granted.

  The Court of Appeals *held*:

  1. Under the law in effect at the time of the suppression hearing and trial, the trial court did not err in admitting the defendant's confession into evidence. Consistent with the requirements of *Miranda, supra*, as construed in *Hill v Whealon*, 490 F 2d 629 (CA

6, 1974), interrogation of the defendant immediately ceased when the defendant asked to speak to an attorney, and without further prompting or coercion, the defendant later indicated that he wished to waive his right to an attorney and give a statement. The defendant was again advised of his *Miranda* rights before confessing. The defendant's right to cut off reinitiated questioning was scrupulously honored as required by *Michigan v Mosley*, 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975).

2. Assuming without deciding that *Edwards*, *supra*, applies to this case, the confession was not obtained in violation of *Edwards*. Pursuant to *Edwards*, an accused who has requested an attorney is not subject to further police interrogation in the absence of counsel, unless the accused initiates further communication. Words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect are the functional equivalent of interrogation. Here, after the defendant invoked the right to counsel, the detective, when informing the defendant of the codefendant's statement and asking the defendant whether he still wanted an attorney, did not resume interrogation of the defendant. It was the defendant who initiated communication that led to the confession when he unequivocally indicated that he no longer wanted an attorney and that he wished to give a statement.

Affirmed.

CORRIGAN, C.J., concurring, stated that the defendant abandoned his original motion for a new trial by failing to establish an evidentiary foundation for neglect by his original appellate counsel or to otherwise pursue the motion, that the trial court did not err in admitting the defendant's confession under the controlling law at the time of the suppression hearing and trial, which law required a demonstration by the prosecution that the defendant was advised of his rights and knowingly and voluntarily waived them, and that *Edwards* does not apply retroactively to this case because this case was not pending when *Edwards* was decided. If the United States Supreme Court's establishment of the prophylactic rule in *Edwards* were legitimate, and if *Edwards* were to apply to this case, the defendant's confession would have been obtained in violation of *Edwards* because interrogation resumed when the detective informed the defendant of the codefendant's statement and asked the defendant whether he still wanted an attorney.

1. CRIMINAL LAW — EVIDENCE — CONFESSIONS — SUPPRESSION — APPEAL.

The Court of Appeals, when reviewing a trial court ruling on a motion to suppress evidence of a confession, reviews the record de novo

but gives deference to the trial court's findings, which will not be disturbed unless they are clearly erroneous.

2. CRIMINAL LAW — POLICE INTERROGATIONS — RIGHT TO COUNSEL.

A suspect under police interrogation, upon invoking the right to counsel, is not subject to further interrogation in the absence of counsel unless the suspect initiates further communication by which the suspect unequivocally indicates that counsel is no longer wanted and that the suspect wishes to give a statement; interrogation is not resumed where the police merely inquire into whether the suspect continues to want counsel.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Acting Chief, Appellate Division, and *Thomas Richards*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for the defendant on appeal.

Before: CORRIGAN, C.J., and GRIFFIN and HOEKSTRA, JJ.

PER CURIAM. On December 18, 1975, defendant was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548. He was sentenced on January 22, 1976, to life imprisonment. He now appeals by leave granted from an order denying his motion for a new trial. We affirm.

I

This case has an unusual procedural history. Defendant's conviction arises from the November 30, 1974, shooting deaths of two gasoline station attendants. At trial, the prosecutor introduced a police confession in which defendant admitted that he and a codefendant, Ronald Sands, shot the two attendants

during a robbery. Codefendant Sands was tried separately and also found guilty of first-degree murder.[1]

The pertinent facts surrounding defendant's police confession are not in dispute.[2] On the morning of November 30, 1974, the police questioned defendant and codefendant Sands about a shooting that occurred earlier that morning at a Tulsa gasoline station. Sands was a former employee of the gasoline station and had been observed in the vicinity of the gasoline station in the company of defendant. Defendant was advised of his *Miranda*[3] rights, and he denied any knowledge of the offense, following which he was released. Later that day, defendant and codefendant Sands returned to the police station for further questioning.

At 2:13 P.M., an assistant prosecutor, Richard Thompson, interviewed defendant in the presence of Detective Robert Lister. After being advised of his *Miranda* rights, defendant asked to speak to an attorney. The questioning immediately ceased, and Thompson informed defendant that they would not talk to him until he had an attorney. Defendant was then taken to another office and left alone. He had access to a telephone, but was not free to leave. While waiting in the office, defendant used the telephone to call a friend to ask for assistance in locating an attorney. The friend apparently informed defendant that he would call back, but defendant never received a return telephone call. In the meantime, the police

---

[1] See *People v Sands*, 82 Mich App 25; 266 NW2d 652 (1978).

[2] In his brief, defendant acknowledges that "there is no conflict over the facts of what occurred during the two interrogations of Mr. Kowalski on November 30, 1974."

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

obtained a statement from codefendant Sands describing what occurred at the Tulsa gasoline station.

Shortly before 3:40 P.M., Detective Lister returned to the office where defendant was located, informed defendant that codefendant Sands had given a statement, and asked him if he "would still like to talk to an attorney." Lister did not discuss the substance of Sands' statement with defendant or mention what effect, if any, the statement might have on defendant's case. Defendant told Lister, "if Ron [Sands] didn't want an attorney, neither did he and he would give a statement." Lister then contacted Thompson, telling him that defendant was now willing to waive his rights and give a statement. Thompson returned and conducted a second recorded interview. Before asking any questions about the offense, Thompson once again advised defendant of his *Miranda* rights and inquired specifically whether he wished to speak to an attorney. Defendant told Thompson that he understood his rights and was now willing to waive his rights and give a statement.[4] Defendant thereafter told

---

[4] The following colloquy occurred between Thompson and defendant:

*Mr. Thompson:* Mr. Kowalski, I know that I gave you your Miranda warnings before and that you wanted to speak to a lawyer before answering any questions.

*Defendant:* Uh-huh.

*Mr. Thompson:* You do know that Mr. Ron Sands has talked to us concerning the incident at the Tulsa gas station?

*Defendant:* Uh-huh.

*Mr. Thompson:* And as I understand it at this time you wish to waive your rights and you will make a statement as to what happened.

*Defendant:* Yes.

*Mr. Thompson:* There's been no threats or promises made to you.

*Defendant:* No.

Thompson that he and codefendant Sands shot the two gasoline station attendants during a robbery. Defendant stated that one of the attendants had "smarted off" to Sands, whereupon Sands shot the attendant with a rifle. Sands then handed the rifle to defendant, and defendant reloaded the rifle and shot the other attendant.

---

*Mr. Thompson:* For the record, I'm going to read you your rights again and we'll go through the same procedure that I went through before. One, you have a right to remain silent. Two, anything you say can and will be used against you in a court of law. Three, you have a right to talk to a lawyer before answering any questions and you have a right to have a lawyer present with you while you are answering any questions. Four, if you can not afford to hire a lawyer one will be appointed to represent you before any questioning if you wish one; and five, you have the right to decide at any time before or during questioning to use your right to remain silent and your right to talk with a lawyer while you are being questioned. Do you understand each of these rights?

*Defendant:* (Shaking head yes)

*Mr. Thompson:* Would you speak audibly so she can take down your answer? Do you understand those rights?

*Defendant:* Right.

*Mr. Thompson:* Do you wish to talk to a lawyer before any questions?

*Defendant:* If Ron ain't going to talk to one, I ain't either.

*Mr. Thompson:* In other words, you waive that right.

*Defendant:* Yes.

*Mr. Thompson:* And will you waive your right to remain silent and answer any questions?

*Defendant:* (Shaking head yes)

*Mr. Thompson:* Yes or no?

*Defendant:* What do you mean by that?

*Mr. Thompson:* Will you waive your right to remain silent and will you answer any questions we might ask you?

*Defendant:* I guess I'll talk. You can ask me the questions then.

*Mr. Thompson:* You will talk to us then?

*Defendant:* Yes.

*Mr. Thompson:* To make a voluntary statement?

*Defendant:* Yes.

*Mr. Thompson:* Just tell us what happened.

Defendant brought a pretrial motion challenging the admissibility of his confession, maintaining that it was involuntary and obtained in violation of his right to counsel. Following an evidentiary hearing, the trial court denied the motion to suppress, ruling:

> Mr. Kowalski did exercise his rights. It is the view of this Court after reviewing all of the physical circumstances that occurred after that, that he decided on his own to waive these rights, and I can find no coercion either implied or psychological or otherwise that caused him to do so. It appears to this Court it was a decision made entirely by himself without any outside or undue pressure.

On March 11, 1976, defendant's appointed appellate attorney timely filed a motion for a new trial, alleging error in the denial of the pretrial motion to suppress defendant's confession. Although a hearing on the motion was scheduled for March 24, 1976, the record indicates that the matter was adjourned without a new hearing date being set. For reasons that are unclear, no further action was taken on the motion, nor was a decision on the motion ever entered.

More than fifteen years later, in 1991, defendant wrote a letter to the court inquiring about the status of his case. The letter mentioned several unsuccessful attempts by defendant to contact his appointed attorney regarding the case during the preceding fifteen years. Because the judge who presided over defendant's 1975 suppression hearing and trial had retired, the matter was assigned to a new judge, who thereupon appointed a new attorney to represent defendant. Defendant's new attorney subsequently filed a "supplement" to the 1976 motion for a new trial, taking the position that the 1976 motion was "still pending" because it had never been withdrawn or other-

wise resolved. The supplemental motion alleged that
defendant's police confession was obtained in viola-
tion of *Edwards v Arizona*, 451 US 477; 101 S Ct
1880; 68 L Ed 2d 378 (1981). Although *Edwards* was
decided more than four years after defendant was
convicted, it was given limited retroactive effect in
*Shea v Louisiana*, 470 US 51, 59; 105 S Ct 1065; 84 L
Ed 2d 38 (1985), to cases that were pending on direct
review at the time it was decided. Defense counsel
took the position that defendant's case was pending
on direct review at the time *Edwards* was decided
because the issue of the admissibility of defendant's
police confession had been raised in a timely filed
motion for a new trial, which motion was never with-
drawn or otherwise resolved.

After a series of delays that are not relevant to this
appeal, the trial court issued a decision on May 4,
1995, denying defendant's motion for a new trial. In
doing so, the trial court found that the 1976 motion
for a new trial had been abandoned and, therefore,
*Edwards* was inapplicable to defendant's case. The
trial court then proceeded to address the admissibility
of defendant's police confession under the law in
effect at the time of defendant's suppression hearing
and concluded that the confession was properly
obtained. This appeal followed.

II

Defendant argues that the trial court should have
suppressed his police confession because it was
obtained in violation of his right to counsel.

On appeal from a ruling on a motion to suppress
evidence of a confession, deference must be given to
the trial court's findings. *People v Cheatham*, 453

Mich 1, 29-30 (BOYLE, J), 44 (WEAVER, J); 551 NW2d 355 (1996). We review the record de novo but will not disturb the trial court's factual findings unless the findings are clearly erroneous. *Id.*

A

We will first address whether defendant's police confession was properly admitted under the law in effect at the time of defendant's suppression hearing and trial.

We begin our analysis with the United States Supreme Court's decision in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). In *Miranda*, the Supreme Court established a set of prophylactic rules to safeguard a suspect's Fifth Amendment privilege against compulsory self-incrimination. The Court held that a suspect in police custody must be informed specifically of the suspect's right to remain silent and to have an attorney present before being questioned. *Id.* at 479. The Court further held that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. Furthermore, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475.

The *Miranda* decision did not state under what circumstances, if any, a resumption of questioning was permitted after a person in custody invoked the rights under *Miranda*. Moreover, the law in this area remained unsettled in the immediate aftermath of the

*Miranda* decision. At defendant's suppression hearing, the trial court relied on the decision of the Sixth Circuit Court of Appeals in *Hill v Whealon*, 490 F2d 629 (CA 6, 1974), in concluding that defendant's confession was properly obtained. We agree that *Hill* supports the trial court's decision to admit defendant's confession.

In *Hill, supra* at 632, the police immediately ceased interrogating the defendant after the defendant stated that he did not wish to waive his rights. Approximately ninety minutes later another officer approached the defendant, informed him that a codefendant had made a statement, and inquired of the defendant whether he had anything he wished to say. *Id.* Without "any further prompting, cajoling, harassment, threats or inducements," the defendant said that he wanted to talk, whereupon he was taken to an interrogation room and fully advised of his rights, following which he gave a statement. *Id.* In addressing whether the defendant's statement was obtained in violation of *Miranda*, the Sixth Circuit Court of Appeals joined the majority of other federal and state courts presented with the issue and refused to construe *Miranda* as creating a proscription of any further interrogation once a suspect declined to make a statement. The court instead adopted the position of the Second Circuit Court of Appeals in *United States v Collins*, 462 F2d 792, 802 (CA 2, 1972), which held:

> "[We] are agreed that what *Miranda* requires is that 'interrogation must cease' until new and adequate warnings have been given and there is a reasonable basis for inferring that the suspect has voluntarily changed his mind." [*Hill, supra* at 635.]

The court in *Hill* held that the defendant's statement was admissible because, "under the facts of this case, the prosecution has sustained its 'heavy burden' of demonstrating that Hill was effectively advised of his rights and that he knowingly and voluntarily declined to exercise them." *Id.* at 635.

The facts of this case are strikingly similar to those in *Hill*. Here, Thompson immediately ceased all questioning after defendant asked for an attorney. Approximately ninety minutes later Detective Lister approached defendant to inform him that codefendant Sands had given a statement and to inquire whether defendant still wanted an attorney. Without any evidence of further prompting or coercion, defendant indicated that he wished to waive his right to an attorney and give a statement. Afterwards, defendant was fully advised of his *Miranda* rights before any further questioning was conducted, following which he repeated his desire to waive his right to an attorney and give a statement.

The foregoing facts demonstrate that, in compliance with *Hill*, defendant was given a new set of *Miranda* warnings before any further questioning was conducted. Moreover, the trial court, upon considering "all of the physical circumstances that occurred after" defendant initially invoked his right to an attorney, concluded that there was "no [police] coercion either implied or psychological or otherwise" regarding defendant's decision to give a statement, and that the decision to give a statement without an attorney was "made entirely by [defendant] without any outside or undue pressure." Our independent review of the record convinces us that the trial court's conclusions are not clearly erroneous.

We disagree with defendant's claim that suppression of his police confession was required by this Court's decision in *People v Mosley*, 51 Mich App 105; 214 NW2d 564 (1974). In *Mosley, id.* at 107, the police advised the defendant of his *Miranda* rights and began questioning him about some robberies. The defendant asserted his right to remain silent and the interrogation ceased. *Id.* Approximately two hours later, another police officer again advised the defendant of his *Miranda* rights and began questioning him about an unrelated murder, following which the defendant gave an incriminating statement. *Id.* Although this Court concluded that the statement was obtained in violation of *Miranda*, this Court's decision was subsequently reversed by the United States Supreme Court in *Michigan v Mosley*, 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975).

The Supreme Court in *Mosley* addressed the issue of police reinitiation of questioning of a defendant who has indicated a desire to remain silent. The Court acknowledged that *Miranda* "does not state under what circumstances, if any, a resumption of questioning is permissible." *Mosley*, 423 US 101. With regard to this issue, the Court observed, on the one hand, that "[t]o permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned." *Id.* at 102. The Court also observed:

> At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irra-

tional obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. [*Id.*]

After concluding that *Miranda* could not "sensibly be read to create a per se proscription of indefinite duration" upon any further police questioning after a person in custody has indicated a desire to remain silent, the Court stated its holding as follows:

> We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored." [*Id.* at 104.]

The Supreme Court decided *Mosley* after the trial court's suppression ruling in this case but before the date of defendant's trial. Although *Mosley* only involved a defendant's assertion of the right to remain silent, not an assertion of the right to counsel, we conclude that the decision to admit defendant's police confession is consistent with the Supreme Court's analysis in *Mosley*. The facts of this case reveal that the police immediately ceased any further questioning after defendant asserted his right to an attorney. Detective Lister did not reapproach defendant until after the passage of a significant period, and after codefendant Sands gave a statement. When defendant expressed a willingness to give a statement upon being informed that Sands had given a statement, a fresh set of *Miranda* warnings was given before any further questioning was conducted, and Thompson also inquired separately whether defendant wanted to speak to an attorney. These facts demonstrate that defendant's right to insist on the presence of an attor-

ney was "scrupulously honored" in this case, consistent with the Supreme Court's holding in *Mosley.*

Accordingly, in view of the foregoing discussion, we conclude that the trial court did not err in admitting defendant's police confession under the law in effect at the time of defendant's suppression hearing and trial.

B

We now turn to a consideration of defendant's claim that relief is warranted under the Supreme Court's subsequent decision in *Edwards, supra.* Defendant must overcome two hurdles in order to be entitled to relief on the basis of *Edwards.* Not only must defendant demonstrate that his confession was obtained in violation of *Edwards,* but he must also demonstrate that *Edwards* may be properly applied to his case. Failing either, appellate relief is not warranted. We conclude that even if defendant were to succeed in convincing us that *Edwards* applies to this case, he has failed to convince us that his confession was obtained in violation of *Edwards.*[5] For this reason, we find that appellate relief is not warranted.

In *Edwards, supra* at 479, following some initial police questioning, the defendant invoked his right to counsel, and the interrogation ceased. The next morn-

---

[5] As noted previously, in *Shea, supra* at 59, the Supreme Court held that *Edwards* applies retroactively to cases that were pending on "direct review" when *Edwards* was decided. The difficulty here is determining whether defendant's case was pending on "direct review" at the time *Edwards* was decided in 1981. Resolution of this issue depends, in turn, on whether defendant's unresolved motion for a new trial properly can be deemed to have been "still pending" at the time *Edwards* was decided, or whether the motion was abandoned beforehand. Because we conclude that the facts of this case fail to establish a violation of *Edwards* in any event, we find it unnecessary to decide this latter issue.

ing, police officers went to the county jail and asked
to see the defendant. The defendant refused to speak
to them, but was told that "he had" to talk. *Id.* The
officers informed defendant of his *Miranda* rights,
following which he gave a statement implicating him-
self. Realizing that additional safeguards were neces-
sary to protect an accused's request for counsel, the
Supreme Court in *Edwards* established a second
layer of prophylaxis for the *Miranda* right to counsel:

> [W]e now hold that when an accused has invoked his
> right to have counsel present during custodial interrogation,
> a valid waiver of that right cannot be established by show-
> ing only that he responded to further police-initiated custo-
> dial interrogation even if he has been advised of his rights.
> We further hold that an accused, such as Edwards, having
> expressed his desire to deal with the police only through
> counsel, is not subject to further interrogation by the
> authorities until counsel has been made available to him,
> unless the accused himself initiates further communication,
> exchanges, or conversations with the police. [*Edwards*,
> *supra* at 484-485.]

With respect to the case at hand, we reject defend-
ant's suggestion that *Edwards* prohibits all communi-
cation between the police and a suspect who has
requested an attorney. Rather, a careful reading of
*Edwards* reveals that what is prohibited is further
"police-initiated custodial interrogation." The decision
states that an accused who has requested an attorney
is not subject to "further interrogation" in the absence
of counsel, unless the accused himself "initiates" fur-
ther communication. Thus, the holding in *Edwards*
rests upon the concepts of "initiation" and
"interrogation."

In this case, Detective Lister returned shortly before 3:40 P.M. and informed defendant that Sands had given a statement and inquired whether defendant "would still like to talk to an attorney." At that point, defendant told Lister, "if Ron [Sands] didn't want an attorney, neither did he and he would give a statement." Lister then summoned Thompson and, when Thompson returned, defendant repeated his desire to waive his right to an attorney and give a statement. Thompson again advised defendant of his *Miranda* rights, following which defendant confessed. In the context of this case, we must determine whether Detective Lister's statements to defendant shortly before 3:40 P.M. constituted "interrogation" and, if not, whether defendant himself "initiated" the subsequent questioning that led to his confession.

For purposes of *Miranda*, interrogation refers to express questioning or its "functional equivalent." *Rhode Island v Innis*, 446 US 291, 300-301; 100 S Ct 1682; 64 L Ed 2d 297 (1980); *People v Anderson*, 209 Mich App 527, 532, 533; 531 NW2d 780 (1995). The "functional equivalent" of interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis, supra* at 301.

As a general principle, a mere inquiry into whether an accused has changed his mind about wanting to speak without an attorney present is not considered "interrogation" within the meaning of *Edwards*. Justice Powell, in his concurring opinion in *Edwards*, touched upon this subject when distinguishing

between permissible custodial communications and custodial interrogation:

> Communications between police and a suspect in custody are common-place. It is useful to contrast the circumstances of this case with typical, and permissible, custodial communications between police and a suspect who has asked for counsel. For example, police do not impermissibly "initiate" renewed interrogation by engaging in routine conversations with suspects about unrelated matters. *And police legitimately may inquire whether a suspect has changed his mind about speaking to them without an attorney.* E.g., *State v Turner*, 32 Or App 61, 65; 573 P2d 326, 327 (1978); see *State v Crisler*, 285 NW2d 679, 682 (Minn, 1979); *State v Marcum*, 24 Wash App 441, 445-446; 601 P2d 975, 978 (1979). It is not unusual for a person in custody who previously has expressed an unwillingness to talk or a desire to have a lawyer, to change his mind and even welcome an opportunity to talk. Nothing in the Constitution erects obstacles that preclude police from ascertaining whether a suspect has reconsidered his original decision. [*Edwards, supra* at 490 (emphasis added).]

Other states, relying on Justice Powell's concurring opinion in *Edwards*, have held that inquiries aimed at determining whether a suspect has had a change of mind about wanting to speak to an attorney do not constitute police-initiated interrogation within the meaning of *Edwards*. In *Moulds v State*, 429 So 2d 1176, 1176-1177 (Ala Crim App, 1983), the accused invoked her right to counsel but was unable to contact her attorney after being given an opportunity to do so. A police sergeant thereafter spoke to the accused for a few minutes and then told her that her attorney would tell her not to make a statement. *Id.* at 1177. The accused responded that she "wanted to go ahead and talk anyway." *Id.* The court rejected the argument that the sergeant's actions constituted inter-

rogation. *Id.* at 1178. The court further held that "[t]he defendant's assertion that she was ready to make a statement, even if made in response to an officer's inquiry of whether she had 'changed her mind about speaking to them without an attorney,' constitutes a communication initiated by the accused under *Edwards*." *Id.* at 1179.

In *Commonwealth v D'Entremont*, 36 Mass App 474, 475; 632 NE2d 1239 (1994), the defendant was arrested for rape and placed in a jail cell after invoking his right to remain silent and to have counsel present. A detective subsequently interviewed the victim and then went to the defendant's cell. *Id.* The detective informed the defendant that she had interviewed the victim and that she knew the defendant had advised the police earlier that he did not want to talk, but if he changed his mind, then she would be willing to speak with him. The defendant informed the detective that he wanted to tell his side of the story. *Id.* The detective advised the defendant of his *Miranda* rights and the defendant subsequently gave a statement. *Id.* 476. The court held that the detective's statements at the jail cell did not constitute interrogation. *Id.* at 479-480. The court further determined that the defendant, by stating that he wanted to tell his side of the story, " 'initiated' further conversation in the ordinary dictionary sense of that word." *Id.* at 480.

Similarly, in *Bunch v Thompson*, 949 F2d 1354, 1361 (CA 4, 1991), the court held that a defendant's statement was not the product of "police-initiated interrogation" where it followed an inquiry that "amounted to nothing more than an effort to ascertain if Bunch had changed his mind about wanting an

attorney." See also *McCall v State*, 501 So 2d 496, 500 (Ala Crim App, 1986) (holding that although interrogation may not continue after a suspect has requested counsel, the police legitimately may inquire whether the suspect has changed his mind about speaking to them without an attorney); *State v Acquin*, 187 Conn 647, 669-670; 448 A2d 163 (1982) (finding that inquiries about counsel do not constitute interrogation); *Foster v Commonwealth*, 8 Va App 167, 174; 380 SE2d 12 (1989) (holding that once a suspect has invoked his right to counsel, police may still legitimately inquire whether the suspect has changed his mind about speaking to them without an attorney).

In light of the foregoing authorities, we conclude that Detective Lister's inquiry into whether defendant "would still like to talk to an attorney" did not constitute police-initiated interrogation within the meaning of *Edwards*.

We further conclude that Detective Lister's remark informing defendant that codefendant Sands had given a statement did not constitute interrogation. The remark did not involve any express questioning, but merely described an event that transpired since Lister last saw defendant. Significantly, Detective Lister made no attempt to discuss the substance of Sands' statement with defendant or to discuss what effect, if any, Sands' statement might have on defendant's case. In this context, the remark was not likely to elicit an incriminating response. In *People v McCuaig*, 126 Mich App 754, 759-760; 338 NW2d 4 (1983), this Court found that a similar remark, which was made under similar circumstances, did not constitute interrogation. In *McCuaig*, *supra* at 757, the defendant invoked his right to an attorney while

being questioned. The officer responded that he would comply with the request and that no further questioning would be conducted. *Id.* However, the officer then advised the defendant of the nature of the charge against him and described the circumstances that led the police to believe that the defendant was the culprit. *Id.* The defendant responded by stating that the officer had been fair with him and that he had changed his mind and wished to give a statement. *Id.* This Court held that the defendant's statement was not made in response to further interrogation by the police:

> In our opinion, the statements made by the police officer, which merely advised defendant of the crime with which he was charged and which described the events which led to that charge, cannot be characterized as further interrogation by the officer or its functional equivalent. See *Rhode Island v Innis,* [*supra*]. The nature of the statements were not such that it can be said that they were intended to elicit a response. Furthermore, the record does not support a finding that the officer should have known that defendant was likely to change his mind in response to the statement. On the contrary, the statement was made in connection with the officer's acknowledgment that he would comply with defendant's request to see an attorney and that no further questioning would occur. Defendant responded by unequivocally indicating that he had changed his mind and that he wished to speak with the officer. [*McCuaig, supra* at 760.]

Accordingly, under the facts of this case, we hold that defendant was not subject to further police-initiated interrogation before he gave his police confession. Furthermore, we hold that defendant, by unequivocally indicating that he no longer wanted an attorney and he wished to give a statement, initiated

the conversation that ultimately led to his confession. No attempt was made to discuss the case with defendant before he made that statement. As the court observed in *Moulds, supra* at 1179, "defendant's assertion that [he] was ready to make a statement, even if made in response to an officer's inquiry of whether [he] had 'changed [his] mind about speaking to them without an attorney,' constitutes a communication initiated by the accused under *Edwards*."

C

In sum, we hold that the decision to admit defendant's confession was proper under the law in effect at the time of defendant's 1975 suppression hearing and trial. We further hold that the circumstances under which the confession was obtained did not violate the Supreme Court's subsequent decision in *Edwards, supra*. Accordingly, admission of the confession at defendant's trial did not constitute error.

Affirmed.

CORRIGAN, C.J. (*concurring*). I part company with the majority because I believe the police interrogation violated *Edwards*[1] prohibition against further police-initiated interrogation, if defendant is entitled to the retroactive application of *Edwards*. I would not, however, apply *Edwards* retroactively to this case because it should not be considered as on direct review. I would affirm the result below on the ground that the trial court correctly concluded that defendant abandoned his original motion for a new trial. Having made this determination, the trial court need not have reached the substantive issues. Defendant should

---

[1] *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981).

have been relegated to the remedies available under MCR 6.500 *et seq.*

I

Unlike the majority, I find it necessary to reach the abandonment issue. I would hold that the trial court correctly concluded that defendant abandoned his motion for a new trial.

The record reflects that the trial judge, Oakland Circuit Judge John N. O'Brien, entered the judgment of conviction on January 22, 1976. Judge O'Brien appointed appellate counsel for defendant five days later. Counsel then timely filed a motion for a new trial on March 11, 1976, and noticed it for hearing on March 24, 1976. The court thereafter adjourned the hearing without setting a new hearing date. On January 18, 1977, the court reporter filed the transcripts of the suppression hearing. On March 3, 1977, the clerk transmitted the lower court file to this Court for use with codefendant Sands' appeal. This Court returned the file to the circuit court approximately six months later, and the clerk notified defense counsel of that action in a letter dated September 27, 1977.

The record reflects that defendant made no attempt whatsoever to pursue his motion for a new trial during the next fifteen years. Defendant eventually moved for appointment of new appellate counsel in March 1992. Defendant asserted in a letter that he had contacted the court and his original counsel several times during the 1970s and 1980s regarding his motion and appeal. Nevertheless, on March 5, 1992, Judge O'Brien dispensed with oral argument and denied the motion for lack of merit because he had appointed counsel for defendant in 1976. The Chief

Judge of the Oakland Circuit Court, however, acting almost contemporaneously, appointed the State Appellate Defender Office (SADO) as counsel for defendant on March 3, 1992.

Two years later, in April 1994, defense counsel filed a "supplemental" brief in support of defendant's motion for a new trial, explaining that his difficulty in locating the transcripts of the trial and other records caused the delay in preparing the brief. Counsel did not move for an evidentiary hearing to provide support for defendant's allegation that original appellate counsel neglected this matter. Thus, the record contains no evidence to support this assertion because defendant's letter is not a sworn affidavit. MCR 2.119(B)(1), 2.611(D)(1), 6.001(D). Defense counsel's representations regarding defendant and original appellate counsel do not support a motion for a new trial even if contained in an affidavit because counsel cannot testify competently to those facts. MCR 2.119(B)(1)(c).

Then Oakland Circuit Chief Judge Hilda Gage heard defendant's motion in December 1994, because Judge O'Brien had died during the interim. Judge Gage issued her opinion on August 24, 1995. In all, over nineteen years had elapsed since defendant's conviction.

Judge Gage initially opined that defendant had abandoned his motion for a new trial. This holding was correct. Generally, a party may abandon a motion by failing to proceed with respect to it. 60 CJS, Motions & Orders, § 42, p 63. In this case, although defendant timely filed and noticed his motion for a new trial within sixty days of the order appointing appellate counsel, GCR 1963, 803.1, he

failed to fulfill his obligation to call the motion to the court's attention.[2] *Forest v Parmalee (On Rehearing)*, 60 Mich App 401, 405; 231 NW2d 378 (1975), aff'd 402 Mich 348; 262 NW2d 653 (1978). The trial court must ordinarily preside over a hearing on a motion for a new trial. 8A Michigan Law & Practice, Criminal Law, § 570, p 241. "A motion for a new trial is a court proceeding, and may, after due notice, be heard at any time when the court is in session." *People v Sanford*, 252 Mich 240, 246; 233 NW 192 (1930). Here, the trial court never presided over a hearing on the motion, nor did it take the motion under advisement by adjourning the hearing.[3] The parties were apparently waiting for this Court's decision in codefendant Sands' appeal challenging the admissibility of his confession on grounds that the police allegedly lacked probable cause to arrest him and defendant Kowalski. Defendant failed to renotice his motion for a new trial after this Court affirmed the trial court's decision in codefendant's appeal. *People v Sands*, 82 Mich App 25, 34-35; 266 NW2d 652 (1978). Therefore, defendant mistakenly argues that his motion remained pending

---

[2] In 1976, the court rules did not require that the court decide a motion for a new trial upon its mere filing. See GCR 1963, 527. By contrast, the present court rules provide that the "trial court shall hear and decide the motion within 28 days of filing," when a defendant files the motion within 56 days after commencement of the period for filing his brief in this Court. MCR 7.208(B)(3).

[3] In *Forest, supra* at 403, this Court quoted 2A CJS, Advisement, p 130, regarding the significance of the court's action in taking a motion under advisement:

"Consideration; consultation; deliberation; the act of a judge or justice in taking time to consider his judgment before rendering the same; the consultation of the court after argument by counsel, and before delivering the opinion."

before the trial court. In fact, the motion was never submitted for decision.

Further, when a trial court fails to rule on a motion, an appellate court presumes that the movant has abandoned the motion unless the circumstances indicate otherwise. *People v Kelly*, 237 Ill App 3d 829, 831; 178 Ill Dec 528; 604 NE2d 1051 (1992). The instant case does not rebut this presumption because defendant provided no evidentiary support whatsoever for his allegation that his original appellate counsel neglected this matter. Generally, the appellant bears the burden of both laying an evidentiary foundation to support his request for a new trial and furnishing this Court with a record that supports any argument for reversal. *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993); *Lemanski v Ford Motor Co*, 82 Mich App 244, 251-252; 266 NW2d 775 (1978). Moreover, the defendant must create a testimonial record to support his claim of ineffective assistance of counsel unless the record already contains sufficient detail to support it. *People v Dixon*, 217 Mich App 400, 408; 552 NW2d 663 (1996). Where the defendant fails to request an evidentiary hearing and the record does not support his claim, this Court will not conclude that he was denied effective assistance of counsel. See *People v Harris*, 201 Mich App 147, 154; 505 NW2d 889 (1993). Here, defendant most likely elected not to pursue his motion after learning of this Court's decision to affirm codefendant's conviction. Defendant had more than two years after the appointment of well-qualified SADO counsel to develop a record to support his assertion to the contrary. During that time, however, defendant never moved for an evidentiary hearing alleging

incompetence of counsel. I would, therefore, affirm Judge Gage's proper conclusion that defendant abandoned his original motion for a new trial.

II

I agree with the majority that the trial court did not err in admitting defendant's confession under the controlling law at the time of defendant's suppression hearing and trial. This case is virtually identical to *Hill v Whealon*, 490 F2d 629 (CA 6, 1974), in which the Sixth Circuit Court of Appeals declined to construe *Miranda*[4] as creating a proscription on further interrogation after a suspect invokes his right to counsel. The court determined that *Miranda* requires interrogation to cease until the interrogator provides new and adequate warnings and a reasonable basis exists for inferring that the suspect has voluntarily changed his mind. *Hill, supra* at 635. *Hill* and the instant case involve defendants who elected to resume speaking with the police only after an officer advised them that a codefendant had made a statement. Under the construction of *Miranda* adopted in *Hill*, I agree with the majority that the prosecution demonstrated that the police effectively advised defendant of his rights and he knowingly and voluntarily declined to exercise them.

The majority also concludes that, assuming that *Edwards* applies to this case, *Edwards* does not mandate a different result. The majority operates under a faulty assumption. My conclusion that defendant abandoned his motion for a new trial disposes of the question whether *Edwards* applies to this case. In

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Shea v Louisiana,* 470 US 51; 105 S Ct 1065; 84 L Ed
2d 38 (1985), the United States Supreme Court con-
sidered the retroactivity of *Edwards, supra,* and held
that its decision applied to cases pending on "direct
review" when it rendered that decision. Thus,
*Edwards* applies to those defendants whose convic-
tions were not yet final when the Court issued its
opinion. For purposes of retroactive application of a
decision, a conviction is "final" under the following
circumstances:

> [A] judgment of a conviction has been rendered, the
> availability of appeal exhausted, and the time for a petition
> for certiorari elapsed or a petition for certiorari finally
> denied. [*Griffith v Kentucky,* 479 US 314, n 6, 321; 107 S Ct
> 708; 93 L Ed 2d 649 (1987).]

Accordingly, the determination whether *Edwards*
applies under the circumstances of this case turns on
whether defendant's motion for a new trial was still
pending when the Court decided *Edwards.* That
issue, in turn, hinges on whether defendant aban-
doned his original motion for a new trial. The record
reveals that defendant abandoned his motion for a
new trial and did not pursue his appeal of right dur-
ing 1977 and 1978. Hence, *Edwards* does not apply
because defendant's conviction became final at least
three years before the Supreme Court rendered its
decision. I would therefore affirm the trial court's
decision to deny defendant's motion for a new trial.

I cannot, however, join the majority's conclusion
that *Edwards* does not mandate a different result
than that reached under *Hill, supra.* I would hold
that if *Edwards* applies to this case, defendant's con-
fession must be suppressed because the police vio-

lated his prophylactic right to counsel under *Miranda*.

In *Edwards*, the Supreme Court promulgated additional safeguards to protect the right to counsel under *Miranda*. The Court held that the authorities may not interrogate a suspect who asserts his right to counsel until counsel has been made available to him, "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards, supra* at 485. Once invoked, a valid waiver of the right to counsel "cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. Accordingly, assuming *Edwards* applies, the question is whether Detective Lister's statements to defendant constituted "interrogation." If they did, the police violated the *Edwards* rule.

The Supreme Court defined "interrogation" for purposes of *Miranda* one year before it issued its opinion in *Edwards*:

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. [*Rhode Island v Innis*, 446 US 291, 301; 100 S Ct 1682; 64 L Ed 2d 297 (1980).]

Contrary to the majority, I would hold that Detective Lister's act of informing defendant that codefendant Sands had made a statement and inquiring whether defendant "would still like to talk to an attorney" constituted interrogation. Detective Lister should have known that his words were reasonably likely to elicit

an incriminating response.[5] The extensive authority

---

[5] Detective Lister testified that he ceased questioning defendant when defendant initially asserted his right to counsel. He stated that approximately an hour and a half later he approached defendant in the area where defendant was being confined. He described his exchange with defendant as follows:

Q. [by the prosecutor] Did you have an opportunity to speak to Mr. Kowalski again at sometime shortly before 3:40 P.M. or shortly before that?

A. Yes. I went into the Fire Chief's office and advised Mr. Kowalski that we had received a statement of what had transpired earlier and asked him if he would still like to talk to an attorney?

Q. Did you tell him who you received that statement from?

A. Yes, sir.

Q. Who was that?

A. From Ronnie Sands.

Q. Okay. And what did Mr. Kowalski say to you?

A. He said if Ron didn't want an attorney, neither did he and he would make a statement.

\*     \*     \*

The Court: When you went back to Mr. Kowalski with the news of what Mr. Sands had done what did you say?

[Defense Counsel]: Yes, pardon me.

Q. [By Defense Counsel]: Yes, correct me if I am wrong, but is it not true, when you went back to Mr. Kowalski and indicated Mr. Sands had given a statement about his participation in the crime and waived his rights, then Mr. Kowalski said—if Sands doesn't want to speak to an attorney, neither do I. Now is that true or not true?

A. That's basically what I said.

\*     \*     \*

Q. Did you indicate to Mr. Kowalski what the effect of Mr. Sands' statement to the police and the Prosecutor would be at that time, that is prior to Mr. Kowalski giving his second statement?

A. You mean did I tell Kowalski what Sands had said?

Q. When you went back and talked to him after Sands had indicated he wanted to give a statement, at that point, when Mr. Kowalski said—since Sands doesn't want to speak to an attorney, neither do I, prior to that, did you indicate to him in any manner what the effect of Sands' statement might have on his case?

A. No, I don't think I did.

relied on by the majority does not control here. The
flaw in the majority's analysis stems in part from
treating Detective Lister's remark and question in iso-
lation rather than as contemporaneous, sequential
statements. Viewed together, Detective Lister's
remark and question subjected defendant to "interro-
gation" under *Innis, supra.*

The Supreme Judicial Court of Massachusetts con-
sidered police conduct similar to that involved in the
instant case in *Commonwealth v Brant,* 380 Mass
876; 406 NE2d 1021 (1980). In *Brant,* Florida police
officers arrested the defendant and his codefendant
after a high-speed chase involving the exchange of
gunfire. Eight days later, an assistant prosecutor from
Massachusetts contacted a deputy sheriff in Florida
to request an interview with the defendant and his
codefendant regarding a robbery that had occurred
two months earlier. The deputy sheriff then inter-
viewed the codefendant, eventually obtaining an
incriminating statement regarding the robbery. The
deputy sheriff reported the codefendant's confession
to the Massachusetts authorities and, a few days
later, the Massachusetts assistant district attorney
and two detectives flew to Florida. The codefendant
subsequently signed a written transcription of his oral
statement. The defendant and codefendant were then
arraigned on charges arising from the Florida inci-
dent. After arraignment, the deputy sheriff and the
Massachusetts authorities sought to question the

---

The Court: Did you tell him anything about the substance of
what Sands had told you?

Detective Lister: No, I don't believe I said anything, I just asked
him if he wanted to make a statement.

defendant and his codefendant regarding the Massa-
chusetts crime. Defendant unequivocally asserted his
right to counsel, whereupon one of the Massachusetts
authorities interjected that the codefendant had made
a statement. The deputy sheriff confirmed the exis-
tence of the statement. After privately conversing
with his codefendant, the defendant informed the
authorities that he desired to make a statement. He
then incriminated himself in response to questioning
by the deputy sheriff.

In *Brant*, the Supreme Judicial Court of Massachu-
setts reversed the trial court's denial of the defend-
ant's motion to suppress. Although the Massachusetts
court decided *Brant* before the United States
Supreme Court's decision in *Edwards*, its application
of *Miranda* is consistent with *Edwards*. The court
construed *Miranda* as requiring that when a suspect
states that he desires an attorney, the police must
cease interrogating the suspect until an attorney is
present. *Brant, supra* at 882. The court explained:

> Not all statements obtained by the police after a person
> has been taken into custody are to be considered the prod-
> uct of interrogation. "Any statement given freely and volun-
> tarily without any compelling influences is, of course,
> admissible in evidence." [*Miranda, supra* at 478.] A "com-
> pelling influence" is not necessarily in the form of express
> questions. The inquiry here is whether the authorities used
> any words or actions, other than those normally attendant
> to arrest and custody, that they should have known were
> reasonably likely to elicit an incriminatory response from
> the suspect. [*Innis, supra* at 301.] The test is an objective
> one. [*Id.* at 883.]

Applying the *Innis* definition of "interrogation," the
court determined that the defendant was interrogated

in violation of *Miranda* when, after he asserted his right to counsel, the authorities informed him that his codefendant had made a statement. *Id.*

Similarly, Detective Lister's statement to defendant that codefendant Sands had given a statement, followed by his inquiry whether defendant still desired counsel, constituted interrogation under *Innis*. Detective Lister's action in informing defendant of Sands' statement cannot be deemed conduct relating to the routine incidents of arrest and custody. *Innis, supra* at 301; *Oregon v Bradshaw*, 462 US 1039, 1045; 103 S Ct 2830; 77 L Ed 2d 405 (1983). It comes as no surprise that defendant reconsidered his decision not to speak with authorities upon learning that Sands had given a statement about the robbery. Although not dispositive, Detective Lister unquestionably intended this result. No other reason exists for informing defendant of Sands' action. Therefore, if *Edwards* applies to this case, the trial court erred in not suppressing defendant's inculpatory statement because Detective Lister should have known that his words were reasonably likely to elicit an incriminating response from defendant.

The intricate dance exemplified in the majority opinion reflects the struggle of state courts to respond to Supreme Court decisions of questionable legitimacy. In my view, the Supreme Court in *Miranda* and again in *Edwards* improperly thrust prophylactic rules on the state courts, exercising supervisory powers it does not possess over general issues of state criminal procedure. *Connecticut v Barrett*, 479 US 523, 528; 107 S Ct 828; 93 L Ed 2d 920 (1987). It is beyond peradventure that defendant Kowalski's confession was voluntary; it was not even

arguably the product of compelled self-incrimination. The instant case, therefore, aptly demonstrates the prophylactic nature of the *Miranda* and *Edwards* rules, because *Miranda* rules were violated without violating the constitution. *New York v Quarles*, 467 US 649, 654-655; 104 S Ct 2626; 81 L Ed 2d 550 (1984). The legitimacy of these rules depends on the existence of either Supreme Court authority to legislate rules that go beyond constitutional requirements or supervisory authority over state courts. Grano, *Confessions, Truth, and the Law* (Ann Arbor: The University of Michigan Press, 1993), pp 173-198. Neither the Fifth nor the Fourteenth Amendment grants the Supreme Court the power to legislate prophylactic rules for state courts. The Court itself recognized this principle of federalism long ago, rejecting the notion that the grant of jurisdiction authorizes the federal court to promulgate a federal general common law. *Erie R Co v Tompkins*, 304 US 64, 78; 58 S Ct 817; 82 L Ed 1188 (1938).

In the absence of lawmaking power, the Supreme Court's authority to establish prophylactic rules must rest on the existence of supervisory power over state judicial proceedings. The Supreme Court has held that it has no such supervisory power absent a constitutional violation. *Smith v Phillips*, 455 US 209, 221; 102 S Ct 940; 71 L Ed 2d 78 (1982). Accordingly, its decision in *Edwards* is illegitimate. Grano, pp 173-198.

It comes as no surprise, then, that state courts struggle to avoid the effect of prophylactic rules when no true Fifth Amendment violation exists. The instant case exemplifies the perverse results that follow from applying a prophylactic rule—a correct

application of *Edwards* would require the suppression of a voluntary statement that not even defendant maintains was obtained in violation of his Fifth Amendment protection against compulsory self-incrimination. The majority has responded to this unjust result by drawing unconvincing distinctions to avoid the reach of *Edwards*. I cannot join the majority's effort to avoid the consequences of the Supreme Court's decision in *Edwards*, but I question the United States Supreme Court's underlying authority to dictate this result.