*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CAMRON LATRELL BURNETT,

       Defendant-Appellant.

FOR PUBLICATION
May 14, 2025
1:42 PM

No. 372000
Genesee Circuit Court
LC No. 23-051383-FC

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying his motion to suppress statements he made to Michigan State Police (MSP) while he was in a Georgia jail for an unrelated offense. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Defendant and two codefendants were charged with the murder of three-year-old MW. The child was killed when some combination of the three men allegedly discharged firearms into a house as purported retribution for a prior shooting.

After the shooting, defendant was detained in Georgia for an unrelated traffic violation. While defendant was in jail, the Michigan State Police (MSP) received a message that defendant wanted to speak with them, so two MSP detectives drove down to defendant in Georgia. At the beginning of the interview, defendant confirmed that he had wanted to speak with the detectives. Defendant mentioned an attorney a few times—he asked whether he was able to have an attorney and what type of deal he may get, and he said that his mother wanted him to speak to an attorney.

---

[1] *People v Burnett*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 372000).

The detectives explained that it would be "weeks and weeks and weeks away" before defendant obtained an attorney in Michigan and that it would take time to get defendant back to Michigan.

Defendant repeated that he wanted to talk his mother, and the detectives stated that they did not have cell service. Defendant stated that he wanted to "cooperate completely. It's just I want my lawyer. I, I will be comfortable with my lawyer cause I just don't, you know I don't know the system." After defendant made this statement, one of the detectives said that she would see if defendant could call his mother. This was more than 22 minutes into the interview.

After speaking with his mother, defendant reiterated that he was willing to cooperate but asked if he was being charged with anything. The detectives explained that the prosecutor brings charges and that the detectives would just take the information to the prosecutor to make that decision. Defendant was then read his *Miranda*[2] rights. Defendant waived his rights and continued speaking with the detectives. After the waiver, defendant again mentioned that he would "feel comfortable with a lawyer," but he did not explicitly request one. The interview lasted about two hours and 15 minutes, not including the break when defendant called his mother.

After defendant was charged, he moved to suppress his statements to the detectives, and a *Walker*[3] hearing was held. During the *Walker* hearing, MSP Detective Trooper Hilary Hoeflin—one of the detectives who interviewed defendant in Georgia—testified that at the beginning of the interview, before defendant spoke to his mother, he stated that his mother wanted him to talk to an attorney. She did not consider that an invocation of his right an attorney because he was debating what to do. Hoeflin also testified that defendant mentioned that

> he wanted to make a deal and had mentioned his attorney at that point, but we had not read him *Miranda* at that point yet. We were still in explaining, conversating. We had not asked him specific questions about the case we were there for at that time.

Hoeflin testified that when defendant said, "It's just I want my lawyer," it was before he was read his *Miranda* rights, and the detectives had not asked him any questions about the case at that point. She stated that after they let defendant speak with his mother, he was willing to cooperate, and at that time defendant was read his *Miranda* rights. Defendant waived those rights, and the detectives began to ask questions about the case.

In an order denying defendant's motion to suppress his statements, the trial court noted that defendant argued that he had invoked his right to counsel at the beginning of the interview. The court rejected this argument, reasoning:

> Defendant said "I ah, didn't know if I get my lawyer present—I really wanted my lawyer present." . . . He also said "I don't—know ah, if I have a court appointed attorney—my mom—said she didn't feel comfortable with me talking without one—if I made my statement—would it—get me off that case—?" . . . The parties

---

[2] *Miranda v Arizona*, 384 US 436, 439; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965).

agree that Defendant was then afforded a private phone call with his Mother subsequent to these inquiries. After Defendant's phone call with his mother, Defendant stated "No, like I said I, I'm fully willing to cooperate." . . . At that time, Defendant was read his *Miranda* Rights. After being read his rights, Defendant was asked if he was willing to give up those rights to provide a statement. Defendant replied "Yes." . . . Only after these events did the substantive portion of the interview commence.

Trooper Hoeflin testified, as supported by the interview transcript, that Defendant mentioned an attorney prior to being read his *Miranda* Rights. At a point later in the interview, Defendant said "No, its just, it just so hard for me cause like I said I was just, I just feel comfortable with a lawyer or, or just knowin' what end up happening with me." . . . Trooper Hoeflin testified at the *Walker* Hearing that she believed Defendant's communications mentioning a lawyer to be inquiries into potentially consulting with a lawyer if he could obtain some kind of deal, but not a clear, unequivocal request for an attorney during the interview.

This evidence clearly shows that Defendant did not unequivocally invoke his right to counsel because a defendant "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstance would understand the statement to be a request for an attorney." *Davis v United States,* 512 US 457 (1994). Indicating that one may feel comfort with an attorney, *or* in the alternative, knowing what was going to happen to them, is not a sufficiently clear request for an attorney. In support of Defendant's position, he cites case law regarding a defendant invoking his right to counsel and being subsequently questioned. However, the cited cases are distinguishable from the issue in this case because Defendant did not unequivocally invoke his right to counsel prior to being read his *Miranda* Rights by clearly articulating his desire to have counsel.

After determining that defendant did not unequivocally invoke his right to counsel before he was read his *Miranda* rights, the trial court determined that the detectives were not coercive or threatening, and that defendant's statements were otherwise knowingly, intelligently, and voluntarily made. The trial court accordingly denied defendant's motion to suppress because defendant waived his *Miranda* rights and did not unequivocally invoke his right to counsel.

Defendant filed leave to appeal this decision, which this Court granted. This case is now before this Court to address the limited question of whether the trial court properly denied defendant's motion to suppress.

## II. ASSERTION OF RIGHT TO COUNSEL

Defendant argues that he unequivocally invoked his right to counsel several times during the interview, but he emphasizes his statement, "It's just I want my lawyer." We agree that this statement was an unequivocal request for an attorney.

A.  STANDARD OF REVIEW

When reviewing a trial court's ruling on a defendant's motion to suppress, the court's factual findings are reviewed for clear error, while the court's "application of a constitutional standard" to those facts is reviewed de novo.  *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014) (quotation marks and citation omitted).

B.  ANALYSIS

The Fifth Amendment of the United States Constitution, applied to the states by virtue of the Fourteenth Amendment, states, "No person . . . shall be compelled in any criminal case to be a witness against himself."  US Const, Am V.  See *Malloy v Hogan*, 378 US 1, 3; 84 S Ct 1489; 12 L Ed 2d 653 (1964).  The right to have counsel present during custodial interrogation is "a corollary" of this right against self-incrimination.  *Tanner*, 496 Mich at 207.

When a suspect unequivocally invokes this right to counsel, "the police must terminate their interrogation immediately and may not resume questioning until such counsel arrives."  *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005).  It is crucial that the invocation of this right be clear and unequivocal—"if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning."  *Davis v United States*, 512 US 452, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994).  It is also crucial that the request reflect a "present desire for counsel," not a future need.  *People v Granderson*, 212 Mich App 673, 677; 538 NW2d 471 (1995).

The test for whether a suspect clearly and unequivocally invoked his or her right to counsel is objective.  *Davis*, 512 US at 458-459.  After the right is invoked, "a valid waiver of that right cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights."  *Edwards v Arizona*, 451 US 477, 484; 101 S Ct 1880; 68 L Ed 2d 378 (1981).

Defendant argues that he requested an attorney four times during the interview, including when he stated, "It's just I want my lawyer.  I, I will be comfortable with my lawyer cause I just don't, you know I don't know the system."[4]  Despite defendant highlighting this statement below, the trial court failed to address the statement in its order denying defendant's motion.  Considering the statement now, we conclude that saying, "I want my lawyer" is a clear, unequivocal, and present demand for an attorney.[5]  Once defendant stated that he wanted an attorney, the detectives were required to cease their interrogation.  See *Tierney*, 266 Mich App at 710-711.  While

---

[4] All of defendant's alleged requests for counsel took place before defendant was read his *Miranda* rights and before he made incriminating statements.

[5] This statement appears in the transcript, and the prosecution never raised any concerns about the transcript's accuracy in the trial court or in its appellate brief; the prosecution waited until oral argument in this Court to raise concerns with the transcript's accuracy.  We therefore consider any issue with respect to the accuracy of the transcript to be abandoned.

defendant added that he "will be comfortable" with a lawyer because he did not "know the system," this comment was an explanation for why he was presently demanding an attorney, and it in no way rendered defendant's statement "I want my lawyer" equivocal or ambiguous.

The prosecution argues—and the trial court agreed—that Hoeflin's testimony that she did not believe defendant's request for an attorney was unequivocal supports that the request was, in fact, equivocal. But whether a defendant unequivocally invoked his right to counsel "is an objective inquiry," *Davis*, 512 US at 459, so an officer's subjective belief is neither determinative nor particularly persuasive. We believe that, objectively, a reasonable officer would understand that a suspect's saying "It's just I want my lawyer" is a clear and unequivocal invocation of the suspect's right to an attorney.[6]

The prosecution insists that even if defendant's request for an attorney was unequivocal, his subsequent waiver of his *Miranda* rights was valid because he reinitiated the conversation. We disagree. Defendant did not independently re-initiate contact with the detectives after he invoked his right to counsel; rather, after he was permitted to speak with his mother, he was brought back into the interrogation room and the interview continued. This shows that defendant's right to end questioning until he had an attorney present was not "scrupulously honored." *People v Kowalski*, 230 Mich App 464, 476; 584 NW2d 613 (1998) (quotation marks and citation omitted). Instead, it was completely ignored.

As explained by the United States Supreme Court, when a suspect has invoked his right to counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 US at 484. Defendant here unequivocally invoked his right to an attorney, and the detectives continued the interview. Even though the detectives subsequently provided *Miranda* rights, defendant's waiver of those rights was invalid. See *id*. The trial court therefore should have granted defendant's motion to suppress.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello

---

[6] Indeed, we tend to agree with defendant that "I want my lawyer" is the quintessential language used to invoke one's right to counsel.