# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

ANTONIO VALENTINE MATHIS,

          Defendant-Appellant.

UNPUBLISHED
December 2, 2014

No. 317519
Macomb Circuit Court
LC No. 2012-004080-FC

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

JAMAL RASHARD ROGERS,

          Defendant-Appellant.

No. 317587
Macomb Circuit Court
LC No. 2012-004077-FC

Before: O'CONNELL, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendants Antonio Valentine Mathis ("Mathis") and Jamal Rashard Rogers ("Rogers") appeal as of right their convictions and sentences after a joint trial held before a single jury. On May 30, 2013, the jury convicted Mathis of assault with intent to murder ("AWIM"), MCL 750.83, conspiracy to commit first-degree murder, MCL 750.316; MCL 750.157a, possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b, unlawful imprisonment, MCL 750.349b, and conspiracy to commit unlawful imprisonment, MCL 750.349b; MCL 750.157a. The same jury convicted Rogers of AWIM, conspiracy to commit first-degree murder, unlawful imprisonment, and conspiracy to commit unlawful imprisonment. On July 9, 2013, the trial court sentenced Mathis, as a fourth habitual

---

[1] *People v Mathis and Rogers*, unpublished order of the Court of Appeals, entered July 1, 2014 (Docket Nos. 317519; 317587).

-1-

offender, MCL 769.12, to 50 to 75 years' imprisonment for AWIM, life imprisonment for conspiracy to commit first-degree murder, two years' imprisonment for felony-firearm, and 10 to 20 years' imprisonment for unlawful imprisonment and conspiracy to commit unlawful imprisonment. On the same day, the trial court sentenced Rogers, as a second habitual offender, MCL 769.10, to 29 to 50 years' imprisonment for AWIM, life imprisonment for conspiracy to commit first-degree murder, and 10 to 22 1/2 years' imprisonment for unlawful imprisonment and conspiracy to commit unlawful imprisonment. We affirm.

## I. UNDERLYING FACTS

Rogers and Latonya Bowman ("Bowman"), the victim, met in high school. In 2011, Bowman became pregnant with Rogers's child. Rogers expressed a desire for Bowman to terminate the pregnancy, but she did not do so. On May 25, 2012, when Bowman was nine months' pregnant, the two went to a drive-in movie together. After the movie, Bowman drove them back to Rogers's home. The two arrived at Rogers's home at approximately 1:30 a.m. the morning of May 26, 2012. When they arrived, Rogers told Bowman to pull her vehicle into the garage. Rogers manually opened the garage door, and after Bowman pulled in, closed it behind her vehicle. Bowman got out of the car, and felt an assailant, wearing gloves, grab the back of her neck and put a gun to her head. Bowman looked at Rogers, who said "Oh, shit," and did nothing else. The assailant restrained Bowman with duct tape and placed her in the rear seat of the vehicle. Duct tape was placed over Bowman's glasses, preventing her from seeing the assailant.

The assailant drove Bowman to an unknown location. The assailant doused Bowman in lighter fluid and lit her on fire. Bowman managed to move the upper half of her body out of the car and tried to roll to put the flames out. While she did so, she heard two gunshots. She played dead, not knowing if she had been struck. She heard the footsteps of her assailant running away from the scene, and once she could no longer hear the footsteps, she managed to fully exit the vehicle and put out most of the flames. She was able to remove the tape binding her hands and, after removing the rest of her restraints and some clothing that would not stop burning, got back in the car. The keys were still in the ignition, so she started the car and drove away. After finding her bearings, she was able to drive to her mother's home, and her mother took her to the hospital.

Police arrested Rogers later that morning. Mathis was later identified as the alleged assailant. Both defendants were charged. Before trial, defendants requested separate trials or juries, and the trial court denied their requests. Rogers also moved to suppress a statement he made to police, which the trial court also denied. Defendants were subsequently convicted, and now appeal.

## II. DOCKET NO. 317519

## A. MATHIS'S MOTION FOR SEPARATE TRIALS

Mathis argues that the trial court abused its discretion when it denied his motion for separate trials. We disagree. "Generally, a trial court's 'ultimate ruling on a motion to sever is reviewed for an abuse of discretion.' " *People v Williams*, 483 Mich 226, 234 n 6; 769 NW2d

605 (2009), quoting *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

"A strong policy favors joint trials in the interest of judicial economy; a defendant does not have an absolute right to a separate trial." *People v Hoffman*, 205 Mich App 1, 20; 518 NW2d 817 (1994). However, the trial court may, and in some cases must, order severance. See MCR 6.121. Pursuant to MCR 6.121(C), a trial court "must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." Mathis argues that severance was required in this instance because his theory of defense could not be reconciled with that of Rogers. However, "Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). "The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision." *Id*. at 346-347. Although he filed a motion for severance which asserted various facts, Mathis did not provide an affidavit or make an offer of proof in connection with the motion. Accordingly, reversal is precluded, "absent any significant indication on appeal that the requisite prejudice in fact occurred at trial . . . ." *Id*.

Mathis argues that he and Rogers presented mutually exclusive defenses, mandating separate trials. "Inconsistency of defenses is not enough to mandate severance; rather, the defenses must be mutually exclusive or irreconcilable." *Id*. at 349 (quotation marks and citations omitted). The first prong of Rogers's defense was that there was insufficient evidence to demonstrate the assailant, whether Mathis or someone else, intended to kill Bowman. The second prong of his defense was that there was insufficient evidence to demonstrate that any agreement was made that would support the conspiracy charges. Mathis first argued that there was insufficient evidence to identify him as the assailant. He then argued, just as Rogers had, that there was insufficient evidence of an intent to kill and insufficient evidence of an agreement to support the conspiracy charges. Thus, Mathis and Rogers presented identical defenses, except to the extent Mathis disputed his identity as the assailant. However, Rogers's defense was not dependant on the jury concluding that Mathis was the assailant; the identity of the assailant was not a component of either prong of Rogers's defense. Mathis and Rogers did not present inconsistent defenses, let alone defenses that were mutually exclusive. As the defenses presented by Mathis and Rogers were not mutually exclusive, the trial court's order may not be reversed, as Mathis has not demonstrated that prejudice occurred at trial. See *id.* at 346-350.

Mathis argues that Rogers's defense was to place the blame on Mathis, citing Rogers's statement to police sergeant John Barnes. Rogers admitted to Barnes that he was present during Bowman's abduction, and told Barnes that the abduction was Mathis's idea and that he told Mathis that he did not want to do anything in relation to the abduction. However, in making his argument, Mathis ignores that Rogers never presented this defense to the jury. Before trial began, Mathis and the prosecutor agreed to a redacted version of Rogers's statement, which removed all references to Mathis. However, the prosecutor never sought to have this redacted statement introduced; instead, the prosecutor questioned Barnes about what Rogers told him during the interview. The trial court precluded Rogers from eliciting testimony from Barnes that

would have allowed the jury to infer that Rogers implicated Mathis in the crime. Rogers chose not to testify, and as such, Rogers presented no evidence to the jury that directly implicated Mathis. Therefore, there is no indication that conflicting defenses were actually presented at trial, and accordingly, reversal is not warranted. See *id*. at 346-347. Further, even had this defense been presented by Rogers, it would not have required severance. Mere fingerpointing is not sufficient to demonstrate mutually irreconcilable defenses, particularly where, as here, the prosecutor's theory allows one defendant to be held criminally liable for the acts of the other. *Id*. at 360-361.

Mathis asserts that he was prejudiced because Rogers's attorney posed a question to Barnes that violated the trial court's order precluding Rogers from eliciting testimony from Barnes that would have allowed the jury to infer that Rogers implicated Mathis in the crime. The question by Rogers's attorney resulted in an objection by the prosecutor and a motion for a mistrial by Mathis. However, due to the timeliness of the prosecutor's objection, Barnes did not respond to the improper question. The trial court sustained the objection, instructed the jury that the question was not evidence, and instructed the jury to disregard the question. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). As the question was never answered, and given the trial court's instructions, Mathis was not prejudiced by Rogers's violation of the trial court's order. *Hana*, 447 Mich at 351 (any risk of prejudice may "be allayed by proper instructions . . . .").

At various points in his brief, Mathis seems to argue that separate trials were required because, even as redacted, Rogers's statement to Barnes caused him substantial prejudice. Mathis and the prosecutor agreed to a redacted version of the statement, and Mathis withdrew his motion to the extent it challenged admission of the statement on confrontation grounds. By explicitly agreeing that the redacted statement could be presented by the prosecutor, Mathis waived any contention that he was prejudiced by the redaction. See *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998) (where a defendant acquiesces to the trial court's handling of a matter, he may not raise it as error in this Court). Further, the redacted statement was not introduced at trial, and none of Rogers's statements referencing Mathis were elicited through Barnes. The trial court also instructed the jury that "[e]ach defendants' statement has been admitted as evidence only against him. It cannot be used against the other, and you must not do so. You must not consider that statement in any way when you decide whether each respective defendant is guilty or not guilty." Once again, "Jurors are presumed to follow their instructions . . . ." *Abraham*, 256 Mich App at 279. At best, Mathis cites to nothing more than incidental spillover prejudice, which is not sufficient to warrant separate trials. *Hana*, 447 Mich at 349. Mathis has not demonstrated that the trial court abused its discretion when it denied his motion for separate trials.

## II.  DOCKET NO. 317587

### A.  THE TRIAL COURT'S ORDER LIMITING THE SCOPE OF CROSS-EXAMINATION

Rogers first argues that the trial court erred when it limited the scope of his cross-examination of Barnes by prohibiting him from questioning Barnes regarding his out-of-court statements implicating Mathis. We disagree.

Although discussed as one issue, Rogers raises three separate claims in regard to the trial court's order. First, Rogers argues that the trial court erred when it ruled that MRE 106, the rule of completeness, did not allow Rogers to introduce his own out-of-court statements at trial. Second, Rogers argues that the trial court's order denied him his constitutional right to present a defense. Finally, he argues that, by limiting the scope of cross-examination, the trial court denied him his right to confront the witness against him.

We review Rogers's preserved claims of evidentiary error for an abuse of discretion, *People v Fink*, 456 Mich 449, 458; 574 NW2d 28 (1998), and his confrontation claim de novo, *People v Beasley*, 239 Mich App 548, 557; 609 NW2d 581 (2000). Ordinarily, "Whether a defendant's right to present a defense was violated by the exclusion of evidence is a constitutional question that this Court reviews de novo." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 538-539; 775 NW2d 857 (2009). However, Rogers did not argue that the trial court's order impermissibly infringed on his right to present a defense, thereby failing to preserve the issue. Because this claim is unpreserved, our review is for plain error affecting substantial rights. *Id.* at 539.

Rogers first asserts that he should have been allowed to question Barnes regarding his statements implicating Mathis under MRE 106, the "rule of completeness." MRE 106 provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." By its terms, MRE 106 only applies if a writing or recorded statement, or part thereof, is introduced. The prosecutor questioned Barnes regarding what Rogers said during his interviews, but never introduced a written or recorded version of the statement. Further, MRE 106 applies only "if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced." *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002). Rogers never sought to have a writing or recorded statement introduced. Because neither the prosecutor nor Rogers sought to introduce a written or recorded version of the Rogers's statement, MRE 106 is of no relevance.

Second, Rogers claims that the trial court's ruling denied him the right to present a defense. "Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). "However, an accused's right to present evidence in his defense is not absolute." *Id.* at 250. "The right to present a complete defense 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012), quoting *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *King*, 297 Mich App at 474 (quotation marks and citations omitted).

Rogers argues that his right to present a defense was denied because he was prohibited from introducing, through cross-examination of Barnes, portions of his statement in which Rogers claimed that Mathis took it upon himself to assault Bowman. However, "An exculpatory statement by a defendant made after his arrest is properly excluded at trial as self-serving." *People v Taylor*, 98 Mich App 685, 690; 296 NW2d 631 (1980), aff'd 422 Mich 407 (1985).

Further, these statements would have been hearsay. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is inadmissible unless a recognized exception applies." *Mesik*, 285 Mich App at 538.[2] Finally, because these statements implicated Mathis, had they been introduced at trial, Mathis would have been denied his right to confrontation, unless Rogers testified. *Bruton v US*, 391 US 123, 127-128; 88 S Ct 1620; 20 L Ed 2d 476 (1968). Rogers does not argue that these rules are arbitrary or disproportionate, and accordingly, has not demonstrated that his right to present a defense was denied. See *King*, 297 Mich App at 474.

Further, if Rogers wished to present his version of events at trial, he was free to do so. Rogers could have testified regarding his and Mathis's role in the incident. Rather than do so, Rogers voluntarily exercised his right not to testify. The trial court's ruling did not prevent Rogers from presenting his defense; rather, it prevented him from doing so in an impermissible manner. See *Bruton*, 391 US at 127-128; *Mesik*, 285 Mich App at 538; *Taylor*, 98 Mich App at 690. In effect, Rogers argues that he should have been able to have his statements admitted without taking the stand, thus avoiding being cross-examined. "A defendant in a criminal case has a right to present a defense, but that right is not cloaked with protection from vigorous cross-examination." *People v Gray*, 466 Mich 44, 48; 642 NW2d 660 (2002).

Finally, Rogers argues that the trial court's ruling violated his right to confront the witnesses against him because it limited the scope of his cross-examination of Barnes. The right of confrontation encompasses the right to cross-examine a witness. *Chambers*, 410 US at 295. However, "The Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (internal quotation marks and citations omitted). "The right of cross-examination . . . may bow to accommodate other legitimate interests of the trial process or of society." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). As was discussed, Rogers's attempt to elicit his own self-serving, out-of-court statements through Barnes ran afoul of several recognized rules of criminal procedure and evidence. Rogers remained free to cross-examine Barnes, so long as he did so within the rules of evidence. Rogers was not prevented from cross-examining Barnes in any meaningful way; rather, he was prevented from using Barnes as a conduit to introduce his own hearsay statements. Rogers's right to confrontation was not violated.

## B. ROGERS'S REQUEST FOR SEPARATE TRIALS OR SEPARATE JURIES

Rogers next argues that the trial court abused its discretion when it refused his request, made on the first day of trial, for separate trials or separate juries. We disagree. We review the

---

[2] Admissions of a party-opponent are specifically excluded from the definition of hearsay. MRE 801(d)(2). Thus, the prosecutor, as Rogers's opponent, could elicit testimony from Barnes regarding Rogers's statements. However, Rogers could not admit his own statement under this same rule, as the statements would not have been made by an opponent of Rogers.

trial court's ruling on a motion for severance or for separate juries for an abuse of discretion. *Williams*, 483 Mich at 234 n 6.

Again, "Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Hana*, 447 Mich at 346. "The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision." *Id*. at 346-347. Rogers did not provide the trial court with an affidavit or other offer of proof to support his request. Thus, reversal is precluded unless there is a "significant indication on appeal that the requisite prejudice in fact occurred at trial . . . ." *Id*.

Rogers argues that the prejudice he suffered was that, because the trial court denied his request for a separate trial or separate juries, he was unable to elicit his own out-of-court statements through his cross-examination of Barnes. He explains that these statements would have supported his defense, in that they would have demonstrated that Mathis acted alone. Even assuming a separate trial or jury had been ordered, Rogers would have been unable to present his own self-serving statements in his trial. *Taylor*, 98 Mich App at 690. Further, these statements would have been inadmissible as hearsay. MRE 801(c); *Mesik*, 285 Mich App at 538. Rogers also asserts that the exculpatory portions of his statement were admissible under MRE 106, the rule of completeness. As discussed *supra*, the prosecutor's questioning of Barnes regarding the inculpatory portions of Rogers's statement did not allow Rogers to admit the exculpatory portions of the statement under MRE 106. Therefore, as Rogers would not have been able to present these statements in a separate trial, Rogers has not demonstrated that holding a joint trial caused him any prejudice. Accordingly, reversal of the trial court's denial of Rogers's request is precluded. *Hana*, 447 Mich at 346-347.

## C. SUPPRESSION OF ROGERS'S STATEMENT

Finally, Rogers argues that the trial court erred when it denied his motion to suppress his second statement to Barnes. We disagree. The trial court denied Rogers's suppression motion, finding that the statement was not the result of an interrogation. Where, as here, the facts relevant to a suppression hearing are not disputed, this Court "review[s] de novo the trial court's decision regarding whether defendant was subjected to 'interrogation' or, more specifically, 'express questioning or its functional equivalent.' " *People v White*, 493 Mich 187, 193; 828 NW2d 329 (2013), quoting *Rhode Island v Innis*, 446 US 291, 300-301; 100 S Ct 1682; 64 L Ed 2d 297 (1980).

As our Supreme Court explained in *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013):

In *Miranda*, [384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966),] the United States Supreme Court held that the Fifth Amendment's prohibition against compelled self-incrimination requires that the accused be given a series of warnings before being subjected to "custodial interrogation." *Miranda*, 384 US at 444 ("Prior to any questioning, the person must be warned that he has a right to

remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."). The right to have counsel present during custodial interrogation is a corollary of the right against compelled self-incrimination, because the presence of counsel at custodial interrogation is one way in which to "insure that statements made in the government-established atmosphere are not the product of compulsion." *Id*. at 466; see also *id*. at 470.

If a defendant, having waived his *Miranda* rights, subsequently requests that counsel be present, questioning must end "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981). See also *Elliott*, 494 Mich at 302. A request for counsel does not prohibit any further communication between police and a defendant. *Edwards*, 451 US at 484-485. Instead, it prohibits further "police-initiated custodial interrogation." *People v Kowalski*, 230 Mich App 464, 478; 584 NW2d 613 (1998).

There is no dispute regarding the underlying facts.[3] Rogers invoked his right to counsel during his first interview with Barnes, and questioning ceased at that point. The following day, Barnes took Rogers to perform a DNA swab. When Barnes returned Rogers to his cell, Rogers stated, "Could we talk?" Barnes told Rogers that he could talk, and Rogers provided Barnes with Mathis's name. Barnes then took Rogers to an interview room and told him that he had all of the rights he "had explained to him the day before, and that he can invoke the right[s] at any time he wants not to talk to [Barnes]." Rogers stated that he understood his rights and agreed to talk to Barnes. Rogers then provided statements that were used against him at trial.

Rogers argues that, by walking him back to his cell after the DNA swab was taken, Barnes conducted what amounted to a custodial interrogation, and accordingly, his request to speak to Barnes and all subsequent statements were obtained in violation of his *Miranda* rights. "For purposes of *Miranda*, interrogation refers to express questioning or its functional equivalent." *Kowalski*, 230 Mich App at 479 (quotation marks and citation omitted). "The functional equivalent of interrogation includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. (quotation marks and citation omitted). Walking a suspect to and from a cell is an action that is normally attendant to custody, and as such, is not the functional equivalent of interrogation. Further, there is no reason why Barnes should have known that, by walking Rogers back to his cell, Rogers was likely to provide incriminating statements. Rogers's argument would ask this Court to hold that any contact with a defendant after that defendant has invoked his right to counsel amounts to custodial interrogation, an argument which this Court has rejected. *Id*. at 478. Rogers's argument lacks merit.

---

[3] For the purposes of the motion to suppress, the parties agreed to rely on testimony from the preliminary examination.

Affirmed.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood