# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 12, 2015

Plaintiff-Appellee,

v

No. 318838
Genesee Circuit Court
LC No. 12-030868-FC

TYREE DARIUS AUSTIN,

Defendant-Appellant.

Before: RIORDAN, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Defendant was charged with open murder, MCL 750.316, carrying a concealed weapon, MCL 750.227, possession of a firearm during the commission of a felony, MCL 750.227b, and possession of marijuana, MCL 333.7403(2)(d). A jury convicted him of the lesser offense of second-degree murder, MCL 750.317, carrying a concealed weapon, felony-firearm, and possession of a marijuana. The trial court sentenced him to concurrent prison terms of 300 to 650 months for the second-degree murder conviction, 24 to 60 months for the carrying a concealed weapon conviction, and one day for the possession of marijuana conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

The jury convicted defendant of murdering Anthony Allen, Jr. (hereinafter "Anthony"), who was shot while sitting in the backseat of a car as it was parked in a driveway. Willie Davis and Dontavus Allen were seated in the front seats at the time of the shooting. Defendant did not dispute that he shot Anthony, but asserted that he acted in self-defense.

Defendant claimed that he had been threatened by Anthony for several months before the offense. Witnesses confirmed that the two had an ongoing feud. On the date of the offense, defendant walked up to the car that was occupied by Anthony, Dontavus, and Davis. He spoke to Dontavus and Davis, and they shared a marijuana cigar, and defendant exchanged words with Anthony, who again threatened defendant. Defendant left, went to his house, obtained a gun, and returned to the car. Defendant claimed that he saw Anthony reaching for a shiny object, which defendant thought was a gun, so he shot Anthony in self-defense. Anthony died from multiple gunshot wounds. Dontavus and Davis both testified that neither they nor Anthony were armed with a weapon, and no weapon was recovered by the police, although the police did find

-1-

Anthony's cell phone in the vehicle. According to Dontavus, Anthony did not move toward defendant or say anything to defendant immediately before defendant shot him.

The trial court instructed the jury on first-degree premeditated murder and second-degree murder, and also on self-defense. The trial court found defendant guilty of second-degree murder, the two weapons offenses, and possession of marijuana.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence to establish his guilt of second-degree murder beyond a reasonable doubt. A challenge to the sufficiency of evidence is reviewed by examining the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have determined that all elements of the charged crime were proven beyond a reasonable doubt. *People v Schaw,* 288 Mich App 231, 233; 791 NW2d 743 (2010). Second-degree murder consists of (1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm. *People v Bailey*, 451 Mich 657, 669; 549 NW2d 325 (1996), amended 453 Mich 1204 (1996). Defendant does not dispute that he intentionally shot and killed the victim, but argues that the prosecution did not meet its burden of disproving that he acted in self-defense. Once a defendant presents evidence of self-defense, the burden is on the prosecution to convince the jury beyond a reasonable doubt that the defendant did not act in self-defense. *People v Dupree,* 486 Mich 693, 709-710; 788 NW2d 399 (2010). Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the defendant's guilt. *People v Abraham,* 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v John Williams, Jr,* 268 Mich App 416, 419; 707 NW2d 624 (2005). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

The killing of another person is justified if the defendant " 'honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself.' " *Dupree,* 486 Mich at 707, quoting *People v Riddle,* 467 Mich 116, 127; 649 NW2d 30 (2002). A defendant does not act in justifiable self-defense when he uses excessive force, or when the defendant is the initial aggressor. *Id.*; see also *People v Guajardo,* 300 Mich App 26, 35; 832 NW2d 409 (2013). "The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *Riddle,* 467 Mich at 119 (footnote omitted). However, one who is confronted with a sudden, fierce, and violent attack, or when he reasonably believes that an attacker is about to use a deadly weapon, there is no duty to retreat and the use of deadly force is permissible, provided the defendant honestly and reasonably believed that it was necessary. *Id*.

Although there was evidence that Anthony had previously threatened defendant, and although Davis and Dontavus testified that Anthony repeated his threats when defendant initially

stopped by the vehicle, the jury could find that defendant was no longer in danger of an imminent threat of death or great bodily harm once he left the vehicle and went home. Instead of remaining safely away from Anthony, defendant retrieved a gun and voluntarily returned to the vehicle, knowing that Anthony was still there. Davis and Dontavus both testified that defendant and Anthony again exchanged words, and defendant challenged Anthony to a fight, but Anthony would not fight. According to Dontavus, Anthony did not move toward defendant or say anything just before defendant shot Anthony. Davis and Dontavus denied that Anthony was armed with a weapon, and no weapon was recovered by the police.

A rational jury could find from the evidence that, notwithstanding the exchange of threatening words, defendant did not honestly and reasonably believe he was in imminent danger of death or serious bodily harm when he returned to the vehicle and shot Anthony. The jury could find that it was defendant who reinitiated the confrontation with Anthony after retreating from the previous threatening situation and reaching a place of safety. In addition, the jury could find from the testimony of Davis and Dontavus that, although Anthony again made some verbal threats, he did not say anything or commit any overt act that would have caused defendant to honestly and reasonably believe that he was at imminent risk of death or serious bodily harm. The evidence that Anthony refused defendant's offers to fight, that Anthony was unarmed, and that Dontavus did not hear Anthony say anything or see him do anything just before defendant started shooting was sufficient to allow the jury to find beyond a reasonable doubt that defendant could not have honestly and reasonably believed that the use of deadly force was necessary to protect himself from an imminent risk of death or serious bodily harm, and thus defendant did not act in self-defense. Although defendant testified that he saw Anthony reaching for a shiny black object, which defendant thought was a gun, it was up to the jury to determine whether defendant's testimony was credible and whether defendant's purported belief was reasonable. Viewed most favorably to the prosecution, the evidence was sufficient to disprove self-defense beyond a reasonable doubt.

## II. ANONYMOUS JURY

Defendant next argues that reversal is required because the jurors were identified only by number, and not by name. Because defendant did not object to this procedure at trial, this issue is not preserved. Accordingly, we review this issue only for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 761-767; 597 NW2d 130 (1999).

Withholding personal information about jurors may violate a defendant's right to due process by (1) affecting the defendant's interest in being able to conduct a meaningful examination of the jurors, or (2) impacting the defendant's presumption of innocence before the jury. *People v Williams,* 241 Mich App 519, 522-523; 616 NW2d 710 (2000). To successfully challenge the use of an "anonymous jury," the defendant must show that information was withheld that prevented meaningful voir dire, or that the presumption of innocence was compromised. *Id*. at 523.

The record discloses that each juror completed a questionnaire before voir dire, a procedure authorized by MCR 2.510, and that the questionnaires were provided to the parties. At no point did defense counsel complain or object that he was hindered in his ability to question the jurors. The record provides no basis for concluding that defendant lacked sufficient

biographical information about the jurors that prevented him from conducting meaningful voir dire. Defendant has also failed to establish that the use of numbers to identify the jurors affected his presumption of innocence. Like in *Williams,* 241 Mich App at 523, the jury might have been anonymous in the literal sense because their names were not placed on the record. But there is no suggestion in the record that the jurors' names were not disclosed because they needed protection from defendant. *Id.* at 524. While defendant argues that the trial court should have given a cautionary instruction advising the jurors that they should not presume that the protection of their identities had anything to do with defendant's guilt or innocence, there was no request for such an instruction. In *People v Hanks,* 276 Mich App 91, 94; 740 NW2d 530 (2007), this Court "strongly urge[d] trial courts to" give the jury a preliminary instruction "that any use of numbers in lieu of jurors' names is simply for logistical purposes and they should not in any way consider it a negative against the defendant," but such an instruction was not made mandatory. Because the instruction is not mandatory, and because there is no suggestion in the record that the jury was led to believe that the use of numbers was necessary to provide protection from defendant, there was no plain error.

## III. DAVIS'S UNAVAILABILITY

Defendant next argues that the trial court erred in ruling that Davis was unavailable for trial, and thereby allowing the prosecution to admit Davis's prior preliminary examination testimony at trial pursuant to MRE 804(b)(1). We disagree. A trial court's decision regarding whether due diligence was exercised to produce a witness is reviewed for an abuse of discretion. *People v Bean,* 457 Mich 677, 684; 580 NW2d 390 (1998). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan,* 494 Mich 713, 722-723; 835 NW2d 399 (2013).

MRE 804(b)(1) permits a court to introduce a witness's former testimony given at a prior hearing if the witness is unavailable for trial and the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Defendant challenges the trial court's determination that Davis was unavailable for purposes of this rule. As applicable to this case, MRE 804(a)(5) provides that a witness is unavailable if the witness is

> absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown.

In *Bean*, 457 Mich at 684, our Supreme Court stated:

> The test for whether a witness is "unavailable" as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it. [Citations omitted.]

The trial court conducted a due diligence hearing to decide the question of Davis's unavailability for trial. The investigating officer exhausted all efforts to locate Davis in Michigan and determined that he was living in Tennessee. The officer contacted Davis's parents several times, but they were only able to give general information about the city and state where he was staying. Dontavus reported that Davis was staying in Nashville, Tennessee, but he could not provide an address or other information that could allow the police to locate him there. Dontavus did provide a telephone number, but attempts to reach Davis at that number went unanswered. Dontavus and Davis's parents both informed the investigator that Davis did not want to return to Michigan and testify because of safety concerns.

Defendant argues that the failure to use other available means to locate Davis precluded a finding of due diligence. We disagree. The investigator admitted that he did not attempt to obtain a court order to track Davis's phone, did not obtain his Social Security number to check for possible places of employment, and did not contact local agencies in the Nashville area to request assistance in locating Davis. But the test of due diligence is one of reasonableness, not whether more stringent efforts could have been made or whether more stringent efforts would have produced the witness. *Bean*, 457 Mich at 684. Neither Davis's parents nor Dontavus were able to provide a specific location of where Davis was living, he was not answering his phone, and he had expressed that he did not want to return to Michigan and testify in this case because of safety concerns. Under these circumstances, and in light of the clear information that Davis had no interest in returning to Michigan, we conclude that the trial court did not abuse its discretion in finding that diligent efforts were made to locate and produce Davis for trial, and that any failure to pursue additional efforts to locate and produce Davis was not unreasonable.

## IV. VOLUNTARY MANSLAUGHTER

Defendant next argues that the trial court erred by denying his request for a jury instruction on the necessarily included lesser offense of voluntary manslaughter. As indicated in *Dupree*, 486 Mich at 702, "[w]e review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion."

In *People v Mitchell*, 301 Mich App 282, 286-287; 835 NW2d 615 (2013), this Court stated:

> When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is "supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). To prove that a defendant committed voluntary manslaughter, " 'one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions.' " *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012), quoting *Mendoza*, 468 Mich at 535. However, provocation is not an element of voluntary manslaughter; rather, it is a circumstance that negates the presence of malice. *Mendoza*, 468 Mich at 536. In *People v Tierney*, 266 Mich App 687; 703 NW2d 204 (2005), this Court held that "[t]he degree of provocation required to mitigate a killing from murder to

-5-

manslaughter 'is that which causes the defendant to act out of passion rather than reason.' " *Id.* at 714-715, quoting *People v Sullivan,* 231 Mich App 510, 518; 586 NW2d 578 (1998). Further, "[i]n order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Tierney,* 266 Mich App at 715 (citation and quotation marks omitted). Whether the provocation was reasonable is a question of fact; but if "no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation." *Id.* (citation and quotation marks omitted).

A rational view of the evidence did not support a finding that defendant shot Anthony in the heat of passion caused by adequate provocation. The evidence showed a long-running dispute between defendant and Anthony. After the initial confrontation with Anthony on the day of the offense, during which defendant claimed that Anthony again threatened him, defendant left, went home, and retrieved a gun. Defendant then returned to the vehicle that Anthony occupied. Although defendant claimed that Anthony continued to make threats during this second encounter, there was no evidence that those threats were anything different from what defendant had heard before. Moreover, there was no evidence that Anthony said or did anything just before the shooting that would have provoked a reasonable person to lose control and act in the heat of passion. The issue the jury was required to decide was whether defendant honestly and reasonably believed that he was at risk of death or serious bodily harm when he allegedly saw Anthony reaching for an object that apparently was a cell phone. Defendant's testimony regarding this alleged observation raised a question of self-defense, not a killing in the heat of passion caused by adequate provocation. The trial court instructed the jury on defendant's claim of self-defense. Because a rational view of the evidence did not support an instruction on voluntary manslaughter, the trial court did not err in refusing to give that instruction.

## V. DEFENDANT'S STATEMENT

Defendant lastly argues that the trial court erred in finding that his custodial police statement was voluntary. "On appeal from a ruling on a motion to suppress evidence of a confession, deference must be given to the trial court's findings." *People v Kowalski,* 230 Mich App 464, 471; 584 NW2d 613 (1998). This Court reviews the record de novo, but any factual findings by the trial court will not be disturbed unless they are clearly erroneous. *Id.* at 472-472. Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *People v Miller,* 482 Mich 540, 544; 759 NW2d 850 (2008).

Whether a defendant's statement was voluntary given is determined by examining police conduct. *People v Tierney,* 266 Mich App 687, 707; 703 NW2d 204 (2005). "[T]he voluntariness prong cannot be resolved in defendant's favor absent evidence of police coercion or misconduct." *People v Howard,* 226 Mich App 528, 543; 575 NW2d 16 (1997). In determining voluntariness, the court should consider the following factors:

> In determining voluntariness, the court should consider all the circumstances, including: "[1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of the questioning; [5] the length of the detention of the accused before he gave the statement in question; [6] the lack of

any advice to the accused of his constitutional rights; [7] whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; [9] whether the accused was deprived of food, sleep, or medical attention; [10] whether the accused was physically abused; and [11] whether the suspect was threatened with abuse." *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988). No single factor is determinative. *Sexton, supra* [461 Mich] at 753. "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Cipriano, supra* at 334. [*Tierney,* 266 Mich App at 708.]

Defendant principally relies on two factors in support of his argument that his statement was not voluntary given. He argues that the police coerced or induced his statement with promises of leniency, and by having his church pastor, who was also a police sergeant, present during the interview. We disagree.

Defendant argues that his statement was not voluntary because it was induced by the interrogating officer's statements that the police were not concerned with defendant's possession of marijuana. It is clear from the record that the officer explained to defendant that he was asking questions about drugs only to determine whether defendant was under the influence of any substances at the time of the interview. The officer's statement that "that's not why you're here" was not a promise of leniency, but only clarification that defendant's drug use or possession was not the purpose of the investigation. Further, that statement was not an inaccurate or misleading statement because the police were investigating Anthony's homicide at the time. Moreover, the statement did not involve a promise of leniency.

The record also fails to support defendant's argument that his church pastor's presence or participation improperly induced defendant's statement. Again, the record clearly shows that the interrogating officer explained to defendant that the pastor was also a police officer and that he was present at the interview in his capacity as a police officer, not as defendant's pastor. Defendant indicated that he understood that, and he also indicated that he understood that he did not have to talk to the officer because of his pastor's presence, and that he should talk to the officer only if that was what defendant wanted to do. Nothing with regard to that exchange or the pastor's presence suggests that defendant was coerced into making his statement.

Because there are no other circumstances suggesting that defendant's statement was not voluntarily given, the trial court did not err in denying defendant's motion to suppress his statement.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood

-7-