*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

IMMANUEL WILLIAMS, JR.,

Defendant-Appellant.

UNPUBLISHED
April 14, 2026
11:31 AM

No. 370531
Berrien Circuit Court
LC No. 2023-000282-FC

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) first-degree felony murder, MCL 750.316(1)(b); (2) first-degree home invasion, MCL 750.110a(2); and (3) possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to serve consecutive sentences of (1) life, (2) 14 to 30 years, and (3) 2 years in prison, respectively. We affirm.

## I. FACTS

In January 2023, defendant, Charles Little, Jr., and Denarion Evans broke into the victim's house. Defendant forced open the front door and was the first to enter. The victim saw defendant, Little, and Evans, and yelled at them to get out. They did not leave. Instead, they continued to move toward the victim—with defendant in the lead. The victim then grabbed his shotgun and pointed it toward defendant. Defendant engaged with the victim, pushed the shotgun barrel away, and continued to struggle with the victim. During this struggle, the victim was shot. When Little and Evans heard the gunshot, they ran out of the house and triggered a motion-activated security camera above the front door of the victim's house. Defendant did not run out of the house but instead stopped at the front doorway and told Little and Evans, "I hit him." Defendant, Evans, and Little then all left the victim's house. The victim's body was found the next day, and it was determined that the victim died from a single gunshot wound through his torso.

When the police arrived at the victim's house, they noted that the camera above the front door was missing. When later recovered, the footage that the front-door camera captured included video of defendant, Little, and Evans entering the victim's house, and video of defendant stating,

-1-

"I hit him." Once defendant was identified as a suspect, the police discovered that defendant wore GPS tether because he was on bond for an unrelated charge. The police then were able to review defendant's tether records and discover that defendant's tether placed him at the victim's house before the break-in, during the break-in, and approximately one hour after the break-in.

Both Little and Evans turned themselves into the police a few days after the break-in. Little revealed to the police that he brought a gun with him to the break-in, but he never fired it. The police took Little's gun for evidence and determined that neither Little's gun nor the victim's shotgun fired the bullet found at the crime scene. Little and Evans both entered into plea and sentencing agreements providing that, in exchange for their testimonies against defendant, they would only be charged with second-degree murder and sentenced to serve 20 years' imprisonment.

Defendant did not turn himself in; instead, he was arrested. When defendant was arrested, Detective Benjamin Mahaffie and Detective Chris Hayward of the Michigan State Police interviewed defendant. Detective Mahaffie advised defendant of his *Miranda*[1] rights, which defendant initially waived, agreeing to speak with the detectives. Defendant originally denied his involvement in the break-in and denied going to the victim's house, but he later conceded that he went to the victim's house to buy some weed. After Detective Mahaffie showed defendant the video from the camera that captured defendant saying, "I hit him," defendant invoked his right to an attorney. This exchange followed:

> *Defendant*: So, can I get my free call?
>
> *Mahaffie*: That's not how it works, bud.
>
> *Hayward*: Yeah, not from here anyway.
>
> *Mahaffie*: Nope. When you get booked into Berrien County, you have a warrant for open murder, okay? So we're bookin' you into Berrien County for Murder. Alright?
>
> *Hayward*: If you do want to talk. If you think about it some more and you wanna reach out to us, make sure you talk to them. And tell us that you wanna provide your version of things. So, right now we're done, we're done talkin'.
>
> *Mahaffie*: We're done talkin' and we can't ask you anymore questions. You asked for a lawyer okay?
>
> *Hayward*: But, but the stuff I told ya . . . (indiscernible)
>
> *Mahaffie*: We just wanna let you know.
>
> *Defendant*: So y'all are sayin—

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Mahaffie*: But, just so you know you—you can reinitiate with us, but we can't ask you anymore questions.

*Hayward*: (indiscernible)

*Defendant*: No listen, I know.

*Mahaffie*: Okay. Would you like us to stay? We can't reinitiate with you okay? So if you wanna talk with us you need to say "you can stay and talk." Alright, so you've asked for a lawyer. We can't, we can't stick around unless you wanna talk to us.

*Defendant*: What is the problem though? What is—

*Mahaffie*: Okay, would you like to keep talking? I—this needs to be crystal clear, man. It—it's just the way the law works, I don't wanna ruin, I'm not gonna step on your rights.

*Hayward*: We work for you, we work for everybody. Yeah, we follow the procedures.

*Mahaffie*: If you wanna talk, we're more than willin' to talk and share our story, I can show you more videos, I can show you more information. But you have to say "I wanna talk."

*Defendant*: Yeah, show me more videos.

*Mahaffie*: Okay.

*Hayward*: We will, yeah.

*Mahaffie*: Are you sure? I wanna be clear, you understand.

*Hayward*: Yeah, clear on this issue. Cause you talked about a lawyer. Are you ready to talk or do you want to talk to us more?

*Defendant*: Can I see the videos?

*Mahaffie*: Yes or no, do you want to talk to us more? You've asked for a lawyer.

*Hayward*: Cause we're not here to lay out—

*Mahaffie*: We're not here to lay out the whole case for ya, but we're happy to talk to you about it and get your side. But again, you've already asked for a lawyer okay? How about this you wanna chat with us you knock on the door and we'll come back and chat with ya. But we cannot reinitiate con—this is how the law works, man. I don't wanna step on your rights.

*Defendant*:  I didn't even do nothin' to the man.

*Mahaffie*:  Okay, so.  Are we still here or are we gone?  Alright, we're steppin' out.  If you'd like to talk, just knock on the door.

Detective Mahaffie and Detective Hayward then left the interview room.

Approximately three minutes later, defendant knocked on the door of the interview room.  This exchange followed:

*Mahaffie*: What's up man?

*Defendant*: Y'all ready?

*Mahaffie*: Okay.  We gotta—we're gonna read you your rights again just so you know.  Okay.  We wanna make it absolutely clear that you reinitiated contact with us.  Is that fair?

*Defendant*: What will talking to y'all do?

*Mahaffie*: I can explain it to you.  But what I'm gonna do is I'm gonna read you—

*Defendant*: I said, what will talkin' to y'all do?

Both detectives explained that they had to readvise defendant of his *Miranda* rights before they could answer defendant's questions.  Detective Mahaffie readvised defendant of his *Miranda* rights and asked if defendant understood them.  Defendant replied in the affirmative.  The detectives then began to question defendant again.  After approximately 10 minutes of questioning, defendant invoked his right to counsel once again, and the interview ended.

The district court held a preliminary examination and bound over defendant for trial.  Defendant then moved the circuit court to quash the felony-murder and felony-firearm charges, arguing that there was no evidence presented at the preliminary examination supporting that defendant was carrying a gun or that defendant knew if Little or Evans was carrying a gun.  Further, defendant argued that homicide was not "a likely result of a Home Invasion" when defendant did not know whether Little or Evans was carrying a gun.  Therefore, there was insufficient evidence to bind over defendant on the felony-murder and felony-firearm charges.  The circuit court denied defendant's motion to quash, concluding that there was both direct and circumstantial evidence that raised triable issues of fact that defendant shot the victim, and in order to shoot the victim, it reasonably followed that defendant possessed a gun.

When defendant moved to quash, defendant also moved to suppress a portion of the statements that he made to Detective Mahaffie and Detective Hayward during his post-arrest interview.  Specifically, he moved to suppress the statements that he made to the detectives after he invoked his right to counsel the first time.  The trial court denied defendant's motion to suppress.

Defendant was convicted and sentenced, as stated earlier.  Defendant now appeals.

## II.  MOTION TO QUASH

On appeal, defendant first argues that the district court erred when it bound over defendant for trial on the felony-murder and felony-firearm charges because the prosecution did not present enough evidence to support a probable-cause determination for both charges.  We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by raising it in his pretrial motion to quash.  See *People v Francis*, 347 Mich App 560, 566; 16 NW3d 323 (2023).  "A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial." *Id*. at 563 (quotation marks and citation omitted).  We do not disturb the district court's bindover decision unless the decision "falls outside the range of principled outcomes," i.e., the district court abuses its discretion. *People v Anderson*, 501 Mich 175, 181-182; 912 NW2d 503 (2018) (quotation marks and citation omitted).  Further, "[a] district court's determination that sufficient probable cause exists will not be disturbed unless the determination is wholly unjustified by the record." *People v Northey*, 231 Mich App 568, 574; 591 NW2d 227 (1998).

### B. ANALYSIS

"The district court must bind a defendant over to the circuit court if it determines that a felony was committed and that there was probable cause to charge the defendant." *Francis*, 347 Mich App at 563-564; see also MCL 766.13.  This standard requires that the prosecution provide sufficient evidence for each element of the charged offense that would "lead a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *People v Bass*, 317 Mich App 241, 280; 893 NW2d 140 (2016) (quotation marks and citation omitted).  "The gap between probable cause and guilt beyond a reasonable doubt is broad, and therefore, unlike a jury, a magistrate may legitimately find probable cause while personally entertaining some reservations regarding guilt." *Anderson*, 501 Mich at 188 (quotation marks and citations omitted).  And "[c]ircumstantial evidence, coupled with those inferences arising therefrom, is sufficient to establish probable cause to believe that the defendant committed a felony." *Northey*, 231 Mich App at 575.  The district court makes this probable-cause determination on the basis of the entire record of the preliminary examination.  See *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013).

### 1. FELONY MURDER

The elements of felony murder include:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result i.e., malice, (3) while committing, attempting to commit, or assisting in the commission of an any of the felonies specifically enumerated in [MCL 750.316(1)(b)]. [*People v Carines*, 460 Mich 750, 758-759; 597 NW2d 130 (1999) (quotation marks and citation omitted).]

In this case, the predicate felony that the prosecution relied upon was home invasion. It is undisputed that the victim was killed and that defendant committed the crime of home invasion. Therefore, we only address whether there was probable cause for a rational fact-finder to reasonably infer that defendant created "a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result . . . ." *Id.* (quotation marks and citation omitted). This element is satisfied when there is evidence that defendant "intentionally set in motion a force likely to cause death or great bodily harm." *Id.* at 759.

Although the evidence presented against defendant at the preliminary examination was circumstantial, there was more than enough evidence to suggest that defendant intentionally set in motion the force that caused the victim's death. See *id.* Most notably, for the felony-murder charge, Little's testimony established that: (1) defendant drove Little and Evans to the victim's house; (2) defendant forced open the front door of the victim's house; (3) defendant was the first to enter the victim's house; (4) when the victim told them to "get out," defendant did the opposite and instead advanced toward the victim; (5) defendant was the only person to tussle and engage with the victim; (6) Little heard one gunshot while defendant was engaging with the victim; and (7) defendant said, "I hit him," after Little heard a gunshot. The prosecution provided further evidence, which corroborated Little's testimony, such as: (1) the medical examiner's report, stating that the victim died of a single gunshot wound; and (2) the victim's front-door security camera footage, capturing (a) defendant in the lead as Little, Evans, and defendant approached the victim's house, (b) the victim saying, "[G]et out," and (c) defendant saying, "I hit him."

In sum, there was more than enough evidence provided to "lead a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" that defendant was guilty of felony murder. See *Bass*, 317 Mich App at 280 (quotation marks and citation omitted). Accordingly, the district court did not err when it bound over defendant for trial on the felony-murder charge.

## 2. FELONY-FIREARM

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Id.* at 268-269 (quotation marks and citation omitted). As explained earlier, there was sufficient evidence to support a probable-cause determination to bind over defendant on the felony-murder charge. Therefore, we need only address whether there was enough evidence to reasonably infer that defendant possessed a firearm.

For the felony-firearm charge, Little's testimony established that: (1) Little never fired his gun; (2) Evans did not have a gun; (3) defendant was the only person engaging with the victim when Little heard the gunshot; and (4) defendant said, "I hit him," after the gunshot was heard. This evidence supports the reasonable inference that defendant possessed a gun, that that gun was used to shoot the victim, and that defendant did in fact shoot the victim. Therefore, there was probable cause to believe that defendant possessed a firearm while committing the crime of felony murder. See *id.*

In sum, there was more than enough evidence provided to "lead a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" that defendant was guilty

of felony-firearm. See *id*. at 280 (quotation marks and citation omitted). Accordingly, the district court did not err when it bound over defendant for trial on the felony-firearm charge.

## III. MOTION TO SUPPRESS

Defendant further argues that the trial court erred when it denied defendant's motion to suppress his post-arrest interview statements because he did not initiate communication with the detectives after he invoked his right to counsel and because he did not voluntarily waive his right to counsel. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by raising it in his motion to suppress. See *People v Clark*, 330 Mich App 392, 414; 948 NW2d 604 (2019). Defendant specifically argues that his statements should be suppressed because the detectives violated the protections afforded by *Miranda*. "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id*. at 415 (quotation marks and citation omitted).

## B. ANALYSIS

In *Miranda v Arizona*, 384 US 436, 467-469; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court held that people who are in custody must be "informed in clear and unequivocal terms" that they have the right to remain silent; that anything they say can be used against them; that they have a right to have counsel present during interrogation; and that if they cannot afford counsel, then one will be appointed for them. If a person has not been given these required warnings, then any evidence "obtained as a result of interrogation" cannot be used against them. *Id*. at 479. But a person may waive these rights if the "waiver is made voluntarily, knowingly, and intelligently." *Id*. at 444.

In the present case, it is undisputed that defendant was appropriately advised of his *Miranda* rights. Further, it is undisputed that defendant appropriately invoked his right to counsel. Therefore, we must determine whether defendant was further "interrogated," whether defendant "initiated" further communication, and whether defendant knowingly, intelligently, and voluntarily waived his right to counsel.

When a person in custody unequivocally asserts his or her right to counsel, all interrogation by the authorities must cease immediately until counsel arrives. *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005); see *Edwards v Arizona*, 451 US 477, 482; 101 S Ct 1880; 68 L Ed 2d 378 (1981). But when a defendant invokes his right to counsel, not all communication between the police and the defendant is prohibited; instead, only further "interrogation" is prohibited. *People v Kowalski*, 230 Mich App 464, 478; 584 NW2d 613 (1998).

"For purposes of *Miranda*, interrogation refers to express questioning or its functional equivalent." *Id*. at 479 (quotation marks and citation omitted). "The functional equivalent of interrogation includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

incriminating response from the suspect." *Id*. (quotation marks and citation omitted). This analysis is an objective test. *People v White*, 493 Mich 187, 196; 828 NW2d 329 (2013).

Further, this Court has specifically held that police inquiries about "whether a suspect has changed his mind about speaking to them without an attorney" are not interrogation. *Kowalski*, 230 Mich App at 480-481 (quotation marks, citation, and emphasis omitted). Additionally, advising the defendant of the crime that he was charged and describing the events that led to the charge is also not interrogation. *Id*. at 483.

An objective review of the exchange between the detectives and defendant, after defendant invoked his right to counsel, reveals that: (1) the detectives briefly informed defendant of the charge that he would be booked on in response to his request for a phone call, see *id*.; (2) the detectives inquired about whether defendant had changed his mind, see *id*. at 480-481; and (3) each time defendant asked them a question, the detectives responded with an explanation of defendant's rights and why they could not talk to him anymore. None of these statements constituted an interrogation because none of them were "reasonably likely to elicit an *incriminating* response from the suspect," and many of them were simply inquiries about whether defendant had changed his mind. See *id*. at 479 (quotation marks and citation omitted; emphasis added). Therefore, defendant was not subjected to interrogation after he invoked his right to counsel.

Police may interrogate a suspect even after the suspect has invoked his or her right to counsel if the suspect initiates further communication with the police. *Id*. at 478. In this case, the detectives twice told defendant that if he changed his mind and decided that he wanted to talk to them about the case, then he could knock on the interview room door. The detectives then left defendant alone in the interview room, and they did not return until defendant decided to knock on the interview room door. The defendant's decision to knock on the door unequivocally indicated to the detectives that he wanted to talk to them about the case because he did exactly what they told him to do if he changed his mind. Accordingly, defendant initiated further communication.

But even if a defendant initiates a conversation related to the investigation, defendant still must have made a voluntary, knowing, and intelligent waiver of his right to have counsel present at questioning under the totality of the circumstances. *Clark*, 330 Mich App at 416. If such waiver is established, then incriminating statements made afterward can be used against the accused at trial. *Id*. The inquiry into whether there was an effective waiver of a defendant's *Miranda* rights has two parts:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*People v Daoud*, 462 Mich 621, 633; 614 NW2d 152 (2000) (quotation marks and citation omitted).]

When evaluating the totality of circumstances surrounding the interrogation, courts "should consider factors such as: the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; whether there was unnecessary delay of the arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency." *People v Gipson*, 287 Mich App 261, 265; 787 NW2d 126 (2010). "A defendant does not need to understand the consequences and ramifications of waiving his or her rights. A very basic understanding of those rights is all that is necessary." *Id*.

In this case, there is nothing in the record that indicates that defendant was intimidated, threatened, or coerced into waiving his right to counsel. In fact, defendant summoned the detectives back to talk on his own volition. Further, the totality of circumstances supports the determination that the waiver was voluntary. The interview lasted roughly 30 minutes, defendant was unhandcuffed during the first portion of the questioning and was only secured when the police left the interview room after defendant invoked his right to counsel, and defendant had snacks and Gatorade available to him throughout the questioning. See *id*. Further, the police never intimidated or threatened defendant, and they also never promised any leniency. See *id*. The record simply provides no support for defendant's assertion that his waiver was involuntary.

Lastly, the waiver was knowing and intelligent because defendant was fully informed of his rights a second time, and he unequivocally indicated that he understood them when he said "mmhmm," "yeah," and nodded in response to the detectives' questions about whether he understood his rights. Defendant's ability to understand his rights is also apparent because he had already indicated that he understood them once before, he knew how to invoke them, and he did in fact invoke his right to counsel twice. Defendant was also on tether for an unrelated offense, so he had some previous experience with the criminal justice system, further supporting the inference that defendant had a basic understanding of his rights.

Accordingly, the trial court properly denied defendant's motion to suppress his post-arrest interview statements.

## IV. SUFFICIENCY OF EVIDENCE

Lastly, defendant argues that there was insufficient evidence for the jury to convict him of felony murder and felony-firearm. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"A defendant need not take any action to preserve a challenge to the sufficiency of the evidence." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). We review de novo a challenge to the sufficiency of evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In applying this standard, we must determine if a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt when the evidence is viewed in a light most favorable to the prosecution. *People v Nowack*, 462 Mich 392, 399-400; 615 NW2d 78 (2000). This standard is deferential to the jury, and we are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Pinkney*, 316 Mich App 450, 468; 891 NW2d 891 (2016) (quotation marks and citation omitted). Further, "[c]ircumstantial evidence and any reasonable inferences that arise from such evidence can

constitute satisfactory proof of the elements of a crime." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020).

## B. ANALYSIS

For defendant's felony-murder conviction, defendant once again argues that there was insufficient evidence to support a determination that defendant "create[d] a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result . . . ." *Carines*, 460 Mich at 759 (quotation marks and citation omitted). As discussed earlier, this element is satisfied when there is evidence that defendant "intentionally set in motion a force likely to cause death or great bodily harm." *Id*. For the same reasons discussed earlier, there was sufficient evidence presented to support the inference that defendant intentionally set in motion a force likely to cause death or great bodily harm. Further, in addition to the evidence presented at the preliminary examination, trial testimony provided further circumstantial evidence supporting the inference that defendant was the only one who could have shot the victim and was in fact the one who shot the victim.

There was testimony that detailed the layout of the house, specifically that the hallway of the victim's house was narrow, so defendant took up most of the hallway and Little and Evans had to have been single file behind defendant. Further, the size of the hallway, and the position of defendant in front of Little and Evans, also supports the inference that defendant was the only person in the position to shoot the victim. Evans's testimony also corroborated Little's testimony because Evans also testified that defendant was the one who forced the door open, engaged with the victim, and said, "I hit him," after Evans heard the gunshot. Moreover, Little testified that he had seen defendant with "some type of glock" before the date of the home invasion, and Evans testified that: (1) defendant told him that he had a gun, and (2) he saw the handle of a gun sticking out of defendant's sweatshirt pocket during the home invasion.

In sum, drawing all reasonable inferences and credibility choices in support of the jury verdict, there was sufficient evidence to support defendant's felony-murder conviction. See *Kenny*, 332 Mich App at 403.

For defendant's felony-firearm conviction, defendant once again argues that there was insufficient evidence to prove that he possessed a firearm during a felony. Either felony murder or first-degree home invasion could have served as the underlying felony for this conviction because defendant admitted to the home-invasion charge, and there was sufficient evidence to support defendant's felony-murder conviction. Therefore, the only issue is whether there was sufficient evidence that defendant possessed a firearm.

Defendant argues that there was no evidence that he brought a gun to the home invasion. This is simply not true. Evans testified that he saw the handle of a gun sticking out of defendant's pocket during the home-invasion. Little also testified that he had seen defendant with a gun before the break-in. Further, there was testimony indicating that neither the victim's shotgun nor Little's handgun could have fired the bullet that was found in the bedroom where the victim was shot. Therefore, the jury could have reasonably inferred that there was a third gun and that defendant possessed that third gun. Accordingly, there was both direct and circumstantial evidence that defendant had a gun during the home invasion and when he shot the victim.

In sum, drawing all reasonable inferences and credibility choices in support of the jury verdict, there was sufficient evidence to support defendant's felony-firearm conviction. See *id*.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace